Joseph W. PRIOR

v.

Norma PRIOR.

Norma PRIOR

v.

Joseph W. PRIOR.

Nos. 80–141–Appeal, 80–174–Appeal.

Supreme Court of Rhode Island.

July 15, 1982.

Lind & Dillon, Edward E. Dillon, Jr., Cumberland, Richard Jessup, Jr., Providence, for Joseph W. Prior, appellant.

Gorham & Gorham, Incorporated, Arthur M. Read, II, Providence, for Norma Prior, appellee.

## OPINION

MURRAY, Justice.

We have consolidated two cases for review. In No. 80–141, Joseph W. Prior (Joseph) seeks review of a judgment of the Superior Court denying his petition for partition. In No. 80–174, Joseph seeks review of a judgment of the Superior Court granting the motion for summary judgment of Norma.

Joseph and Norma were married in 1947. In 1957 the Priors purchased an unimproved parcel of land in Scituate, Rhode Island, as joint tenants. On the land a home was built, and the family proceeded to occupy such property. In January of 1977, Joseph, evidently dissatisfied with his living situation, moved out of the marital domicile and began living separate and apart from Norma.

Subsequently, Joseph instituted a divorce action in the Family Court. Thereafter, Norma filed a motion in the nature of a cross-petition. After a trial on the matter, the Family Court denied Joseph's petition and granted Norma's cross-petition on the ground that there existed irreconcilable differences between Norma and Joseph which had caused the irremediable breakdown of the marriage. The decree ordered Joseph to pay Norma $55 per week in support and also gave Norma exclusive use of the marital domicile.

On October 23, 1978, Joseph filed with the Family Court a motion to partition the marital domicile. Evidently, several other motions were also filed, including a motion to modify the award of alimony. Shortly thereafter, Norma filed a motion to adjudge Joseph in contempt for failing to make the alimony payments as required by the interlocutory decree. Norma also filed a number of other motions.

The various motions came to be heard on January 3, 1979, before a justice of the Family Court. In his order, the trial justice granted Norma's motion to adjudge Joseph in contempt. He found Joseph in willful contempt of the interlocutory decree for failing to pay the required alimony. The arrearage until paid was to serve as a lien against Joseph's one-half interest in the marital domicile. He also denied Joseph's motion to modify, finding that no change of circumstances had occurred since the entry of the interlocutory decree. He reordered Joseph to pay $55 per week and stated that any unpaid amount above a $20 minimum was to serve as a lien upon Joseph's interest in the marital domicile. Finally, Joseph's motion for partition was continued nisi.

On January 12, 1979, a final decree of divorce was entered in the Family Court. The final decree republished much of the order entered after the January 3, 1979 hearing. The decree granted exclusive use

of the marital domicile to Norma, ordered Joseph to pay $55 per week in support payments, and mandated that any amount over $20 per week not paid by Joseph would serve as a lien upon his one-half interest in the marital domicile.

On March 7, 1979, Joseph filed in the Superior Court a petition for partition of the Scituate property. After hearing, the trial justice sitting without a jury denied the petition, and judgment was subsequently entered for defendant. Joseph's appeal from the entry of such judgment forms the basis for case No. 80–141.

At the Superior Court hearing held on December 17, 1979, both Joseph and Norma testified as well as David Anthony (Anthony), a real estate appraiser. Anthony testified that he had carefully examined the property and found the house to have a fair market value of $58,000. He also stated that obviously the traditional single-family ranch house could not be divided by metes and bounds.

While testifying, Joseph explained that he had since remarried and was having trouble meeting his current obligations. He gave a detailed account of how the former marital domicile had come to be built; he admitted that the whole family, including two older sons who have since moved away, assisted in clearing the unimproved lot and in performing certain unspecified tasks related to the erection of the house.

While on the witness stand, Norma explained that she had held various jobs during her marriage to Joseph and subsequent to their divorce. She carefully detailed the labors she had performed in the construction of the house; they included painting, work on the foundation of the house, and the clearing of the wooded lot as well. She also testified that she currently spends an average of $300 per month on the house; this figure includes the mortgage and tax payments she is obligated to make pursuant to the final decree.

■ In his bench decision, the trial justice carefully reviewed the facts and found that the property could not be divided by metes and bounds. Because the property could not be divided by metes and bounds, the trial justice correctly realized that the decision on whether or not to order partition rested in his sound judicial discretion. De Bartolo v. Di Battista, 117 R.I. 349, 351–52, 367 A.2d 701, 702 (1976); Bianchini v. Bianchini, 76 R.I. 30, 34–35, 68 A.2d 59, 62 (1949). He also acknowledged that he was required to consider all the facts and circumstances prior to making his decision and that generally substantial loss or injury to a party does not affect the right to partition.

■ The trial justice evidently refused to order partition, relying upon his belief that Joseph was attempting to accomplish what he had failed to accomplish a short time earlier in the Family Court: the modification of his support obligations. It cannot be doubted that the trial justice was correct in finding that the exclusive use of the marital domicile granted to Norma was an integral part of the support given to her by the Family Court decree. The trial justice then found that no evidence was presented which would justify an altering of that decree. In sum, we are of the opinion that the trial justice exercised his discretion with a view toward the rights of both Norma and Joseph. No more is required of him. See De Bartolo v. Di Battista, 117 R.I. at 353, 367 A.2d at 703.

In cases involving a trial justice's exercise of discretion, we shall not disturb his decision unless it clearly appears that such discretion has been improperly exercised or there has been an abuse thereof. Matracia v. Matracia, 119 R.I. 431, 438, 378 A.2d 1388, 1391 (1977). In the present case it is obvious to this court that the trial justice did not abuse his discretion in refusing to order partition of the former marital domicile.

In regard to case No. 80–174, Joseph appeals a Superior Court judgment that awarded Norma a sum of $4,525 plus interest based upon accrued but unpaid alimony installments owed by Joseph. On November 2, 1978, Norma brought an action in the District Court seeking collection of the unpaid alimony arrearages. The case was

submitted to a trial justice of the District Court on an agreed statement of facts; in a written decision he granted Norma the relief she had requested. Joseph then claimed an appeal de novo to the Superior Court. In the Superior Court Norma filed a motion for summary judgment, and Joseph's counsel later countered with a cross-motion for summary judgment. The parties stipulated to the action's being decided by a trial justice of the Superior Court on the previously submitted agreed statement of facts with one minor amendment to such statement. In a written decision, the trial justice rejected the arguments presented by Joseph and granted Norma's motion for summary judgment.

In his brief, Joseph argues that Norma was not "entitled" to bring the current action because the Family Court order entered subsequent to the January 3, 1979 hearing, and which was substantially incorporated into the final decree, modified Joseph's original obligation to pay $55 per week. According to Joseph, the order allowed him to satisfy his alimony obligations by paying Norma $20 in cash and by allowing a lien to be placed upon his interest in the former marital domicile for the remaining amount.

The relevant portion of the above-mentioned order which has been incorporated into the final decree provides that

"[Joseph] is ordered to pay to [Norma], the sum of $55 per week as support * *. [Joseph] is ordered to pay * * * at least $20 of such weekly payment, each week in cash. Any unpaid balance shall accrue each week as a judgment against [Joseph] * * * and shall act as a lien upon [Joseph's] interest in the marital domicile * * *."

██ As has been previously mentioned, the Family Court found Joseph in willful contempt of its interlocutory order that required him to pay $55 per week in support payments to his former wife. This contempt holding clearly does not prevent Norma from bringing her action in the nature of debt on judgment in the Superior Court. *Lippman v. Kay*, R.I., 415 A.2d 738, 741–42 (1980).

██ In regard to Joseph's argument, we are not of the opinion that the order entered subsequent to the January 3, 1979 hearing in any way altered his support obligations. In fact, specific in the order itself is the trial justice's denial of the motion to modify based upon the fact that he found that no material change of circumstances had occurred since the entry of the interlocutory decree. In addition, the order republished the interlocutory decree and "reorder[ed] [Joseph] to pay * * * the sum of $55 per week for * * * support * * *." Clearly, Joseph's alimony obligations were unchanged. The actual effect of such order was to place a lien upon Joseph's interest in the former marital domicile to the extent that he had not satisfied his alimony obligations.

In conclusion, we are of the opinion that the trial justice was correct in granting Norma's motion for summary judgment.

Joseph's appeals are denied and dismissed, the judgments appealed from are affirmed, and the cases are remanded to the Superior Court for further proceedings.

SHEA, J., did not participate.