399 A.2d 1214.

Eila F. Knibb *et al. vs.* Security Insurance Company of New Haven *et al.*

MARCH 30, 1979.

Present: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J.  The United States District Court for the District of Rhode Island has certified to this court the following question of law pursuant to Supreme Court Rule 6:

> "[W]here an execution debtor husband dies before real property owned by him and his surviving wife as joint tenants is sold but after such real property is levied pursuant to such execution, does his surviving wife take such property subject to the unsatisfied judgment against her husband, or does she become the sole owner thereof by virtue of her survivorship?"

The District Court has provided a statement of facts relevant to the present controversy. These facts indicate that on April 13, 1947, Eila F. Knibb and Cyril W. Knibb (Knibb) acquired title as joint tenants to a parcel of real estate situated in the town of Burrillville. This parcel of property, known as "Stonehenge Farms," was attached on January 7, 1965, pursuant to an action initiated in the United

States District Court for the District of Rhode Island by Security Insurance Company of New Haven against Knibb individually. The insurance company obtained a judgment against Knibb in the amount of $125,000 and proceeded to levy execution on the real estate on December 8, 1971, and again on February 12, 1974. Both levies of execution were recorded in the Office of Land Records of the Town of Burrillville. On September 10, 1974 judgment debtor Knibb died prior to the sale of levied property.

Eila F. Knibb (plaintiff), individually and as administratrix of the estate of Knibb, brought an action in Federal District Court against Security Insurance Company of New Haven — Security Insurance Company of Hartford (defendant). The plaintiff is seeking declaratory relief regarding the real estate levied upon by defendant.

Before addressing the certified question, we note that the present controversy concerns the execution and levy of a judgment obtained in a Federal District Court. Rule 69a of the Federal Rules of Civil Procedure provides that absent any applicable federal statutes the procedure on executions shall be in accordance with the existing practice of the state in which the District Court action is brought. *United States* v. *Potter,* 19 F.R.D. 89 (1956); Wright & Miller, *Federal Practice and Procedure: Civil* §3012. Because there are no relevant federal statutes involved in the present controversy, Rhode Island procedural law governing execution and levy controls this matter.

Both plaintiff and defendant agree that the key determination to be made by this court is when the joint tenancy was severed. The plaintiff initially directs our attention to G.L. 1956 (1969 Reenactment) ch. 26 of tit. 9, the statutory scheme that governs the levy and sale of a judgment debtor's property on execution. The plaintiff argues that in enacting this legislation, the General Assembly intended to allow property to be sold only after levy of the execution, notice of sale and passage of the 3-month period of redemption pur-

suant to §9-26-16.[1] Pursuant to this statute, post-sale execution and delivery of the sheriff's deed transfers title from the judgment debtor to the purchaser. The plaintiff therefore concludes that severance of the joint tenancy, which is triggered at the moment when title passes, can arise only after sale of the real estate.

In response defendant contends that the levy of execution severs the joint tenancy. In order to support this proposition, defendant explains that prior to the time of the levy, Knibb held an undivided one-half interest in the property as a joint tenant. When the officer levied the property pursuant to §9-26-15,[2] the officer acquired the power to convey at a subsequent judicial sale all the interest Knibb had in the levied real estate. Because this power arose in the officer at the time of the levy, defendant argues that the levy severed the joint tenancy, converting it into a tenancy in common.

---

[1]General Laws 1956 (1969 Reenactment) §9-26-16, entitled "Advertisement and sale of real estate levied on — Disposition of proceeds," provides that:

> "The officer shall give public notice of said levy and of the intended sale of said real estate or interest therein under said levy by causing an advertisement thereof to be published once a week for the space of three (3) weeks next before the time of such sale in some public newspaper published in the county where the said real estate lies, and if no such public newspaper be published therein, then in some public newspaper published daily in the city of Providence, and, if no person redeem said real estate or interest therein before the same shall be exposed for sale, which said sale shall not be earlier than three (3) months after such levy, said officer shall sell the same, or so much thereof as shall be sufficient to satisfy the judgment obtained and the cost and charges, at public auction, and a deed thereof, by him given, shall vest in the purchaser all the estate, right and interest which the debtor had therein at the time said estate was attached, or in case there was no attachment, all the estate, right and interest which the debtor had at the time said levy was made, and the surplus of money that shall arise from the sale of said real estate or interest therein after satisfying the execution and the costs and charges, shall be deposited with the general treasurer for the owner thereof, and shall be liable to be attached for his other debts."

[2]General Laws 1956 (1969 Reenactment) §9-26-15, provides that

> "The filing of the copy of the execution with the recorder of deeds, if any, or with the town clerk or city clerk, as provided in §9-26-14, shall constitute and be deemed a good and sufficient levy upon the real estate or any interest therein so described upon said copy of the execution."

The defendant concludes that after the levy the original judgment thus became a lien upon the interest of the judgment debtor in the tenancy in common.

Under common law, essential to the creation and continued existence of an estate in joint tenancy are the unities of interest, title, time and possession.[3] 2 Blackstone, Commentaries 180; 4 Thompson, *Real Property* §1777 at 15 (1961); 2 Tiffany, *Real Property* §418 at 196 (3d ed. Jones 1939). Thus joint tenants are required to have equal interests, acquired by the same conveyance, commenced at the same time and held by the same undivided possession.[4] 2 Blackstone, Commentaries 180. Absent a statute to the contrary, this common-law proposition has been accepted in this jurisdiction. *Millman* v. *Streeter,* 66 R.I. 341, 346, 19 A.2d 254, 257 (1941).

Severance of the joint tenancy occurs upon the destruction of one or more of these unities. 4 Thompson, *Real Property* §1780 at 31-32; 2 Tiffany, *Real Property* §425 at 208. Each unity can be dissolved by various means, such as operation of law, the voluntary or involuntary act of one joint tenant or death. 4 Thompson, *Real Property* §1780 at 31-32; Freeman, *Cotenancy and Partition* §29 at 82 (1886).

Characteristic of a joint tenancy is the fact that upon the death of one joint tenant, the remaining joint tenants acquire the entire estate by the right of survivorship. 4 Thompson, *Real Property* §1779 at 21-22; 2 Tiffany, *Real Property* §419 at 198. In the case before us, Knibb died on September 10, 1974. On that date, if severance had not previously occurred, plaintiff would have become the sole owner of the property

---

[3]It has been noted that this "fourfold unity" simply means that each tenant stands in exactly the same position as all the others. Challis, *Real Property* at 274 (1887).

[4]Although we acknowledge that there is a modern trend to determine joint tenancies based on the tenants' intention as manifested by acts or agreements when dealing with voluntary alienations, see *Lancellotti* v. *Lancellotti,* 119 R.I. 184, 194, 377 A.2d 1315, 1320 (1977) (dissenting opinion), we note here that the current issue involves an attempted involuntary alienation.

by virtue of her survivorship. Therefore, upon these facts, in order for plaintiff to take the property subject to the unsatisfied execution against her husband, the levy of the execution, which is the only procedure that took place before September 10, 1974, must have severed the joint tenancy. We thus focus our inquiry on whether the levy of the execution upon the real estate severed the joint tenancy.

We are of the opinion that the levy of the execution did not sever the joint tenancy. Initially we observe that the unities of time and title were not altered by the levy. Regarding the unity of time, both plaintiff and Knibb acquired title to the real estate on April 13, 1947. Since the levy of execution could not have had an effect on the time at which the joint tenants acquired the real estate, the unity has not been destroyed.

Nor did the levy destroy the joint tenants' unity of title. By definition, unity of title means that the joint tenants acquired title by the same conveyance. According to the stipulated facts, plaintiff and Knibb acquired the property as a result of the same conveyance. Therefore the levy did not destroy the unity of title.

We are also of the opinion that the levy of the execution upon the real estate did not destroy the unity of possession of the joint tenants. In this jurisdiction only levies upon personal property are governed by §9-26-12,[5] which empowers the levying officer to take possession only of goods and chattels levied upon prior to sale. Because the present situation deals with real estate not subject to this statutory seizure, obviously the levy did not interfere with the possession of the joint tenants.

We now consider whether the levy of execution destroyed the joint tenants' unity of interest. At the time of the levy of the execution, defendant had a mere lien upon the property,

---

[5]General Laws 1956 (1969 Reenactment) §9-26-12 provides in pertinent part:

"In all cases when execution shall be levied on any goods or chattels, such goods and chattels shall be kept in the possession of the officer * * *."

which only had the potential of ripening into title following a judicial sale. *Van Antwerp v. Horan*, 390 Ill. 449, 454, 61 N.E.2d 358, 360 (1945). As a result, the levy of execution only gave rise to an expectation of title in defendant, giving defendant no greater interest than that already possessed. *Id*. We fail to ascertain how this mere expectation alters the interest of the joint tenants and therefore conclude that the levy does not destroy the unity of interest.

As a result of the above analysis we hold that the levy of execution did not sever the joint tenancy prior to the death of Knibb. We conclude therefore that when an execution debtor husband dies before real property owned by him and his surviving wife as joint tenants is sold, but after such real property is levied pursuant to such execution, his surviving wife becomes the sole owner thereof by virtue of her survivorship.

*Goldman, Biafore & Hines, Dennis H. Esposito*, for plaintiffs.

*Gunning, LaFazia & Gnys, Inc., Guy J. Wells, Bernard P. Healy*, for defendants.