831 A.2d 40

Gail Lynn HELINSKI and Mark P. Mueller

v.

HARFORD MEMORIAL HOSPITAL, INC.

No. 133, Sept. Term, 2002.

Court of Appeals of Maryland.

Aug. 27, 2003.

608

Stanley A. Snyder, Randolph C. Baker (Margolis, Pritzker & Epstein, P.A., on brief), Towson, for petitioners.

Kevin T. Olszewski, Bel Air, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, J.

On 2 October 2001, Harford Memorial Hospital, Inc. ("Respondent") obtained a judgment in the District Court of Maryland, sitting in Harford County, against Constance Helinski ("Judgment Debtor") for a personal debt in the amount of $4,727.53, plus costs and attorneys' fees. On 8 November 2001, Respondent filed a Notice of Lien in the Circuit Court for Harford County and, on 13 November 2001, filed a Request for Writ of Execution with respect to certain improved real property in Harford County owned as joint tenants by the Judgment Debtor and the Petitioners, Gail Helinski and Mark P. Mueller. The writ was issued by the Clerk's office on 20 November 2001, but the Judgment Debtor died in late December before the Sheriff executed on the writ. Contending that the property was transferred to them by operation of law at the decedent's death free and clear of the judgment lien against Constance Helinski, Petitioners filed in the District Court a Motion to Release the Property from Levy, which was denied. Petitioners then appealed the judgment to the Circuit Court for Harford County, which affirmed the denial by the District Court of Petitioners' motion. We granted certiorari on Petitioners' initiative to determine, because Maryland law requires a joint tenancy with rights of survivorship to be severed before the interest of one joint tenant can be levied upon, whether such a severance occurred on the facts of this case. 373 Md. 406, 818 A.2d 1105 (2003). We conclude that a severance did not occur here prior to the Judgment Debtor's demise. Thus, we shall reverse the judgment of the Circuit Court.

## I.

The facts are undisputed. Prior to the Judgment Debtor's death, Petitioners and the Judgment Debtor owned improved

property in Forest Hill, Maryland (the "Property") as joint tenants, with rights of survivorship. Respondent's judgment against Constance Helinski, obtained on 2 October 2001, was for a personal debt in the amount of $4,727.53 plus costs and attorneys' fees. A Notice of Lien as to the judgment was recorded in the Circuit Court. Next, Respondent filed a Request for Writ of Execution with respect to the Property on 13 November 2001, which was issued and delivered to the Sheriff on 20 November 2001.

A little over a month later, on 27 December 2001, Constance Helinski died. Three weeks later, on 17 January 2002, the Sheriff went to the Property and served a copy of the Writ of Execution upon Gail Helinski and Mark P. Mueller, the Petitioners in the present case, and learned for the first time of Constance Helinski's passing. The sheriff wrote on his return "*mortuus est*" as to the Judgment Debtor.

It is undisputed that the Sheriff failed on 17 January 2002 to post "a copy of the writ and the schedule in a prominent place on the property," as required by Rule 3–642(a).[1] The record also indicates that he failed to furnish a copy of the schedule to the surviving Ms. Helinski or Mr. Mueller, who were in possession of the Property, as required by Maryland Rule 3–642(a).[2]

Petitioners filed a Motion to Release the Property from Levy, together with a Request for Hearing, in the District

---

1. Maryland Rule 3–642(a) provides:
 Levy upon real property. Except as otherwise provided by law, the sheriff shall levy upon a judgment debtor's interest in real property pursuant to a writ of execution by entering a description of the property upon a schedule and by posting a copy of the writ and the schedule in a prominent place on the property.

2. Maryland Rule 3–642(d) provides:
 Notice of Levy. The sheriff shall furnish a copy of the writ of execution and schedule to any person found by the sheriff to be in possession of the property, and, if that person is not the judgment debtor, the sheriff shall promptly mail a copy of the writ and schedule to the judgment debtor's last known address.

Court, contending that, because the Judgment Debtor died before the Sheriff executed the writ against the Property, her individual interest in the Property died with her. Consequently, they argued, as surviving joint tenants, that they owned the Property free and clear of any judgment lien against the late Ms. Helinski. The District Court disagreed and ruled in favor of the Respondent, finding that the date of execution of the writ related back to the date that the Sheriff received the writ. As that date, 20 November 2001, preceded the Judgment Debtor's demise on 27 December 2001, the court determined the writ reached her interest in the property.

Petitioners appealed to the Circuit Court, which affirmed the District Court's ruling that the date of execution relates back to the date that the Sheriff received the writ. The Circuit Court, in addition to agreeing with the relation back reasoning of the District Court, also looked to the language of Maryland Rule 3-641(c),[3], requiring the Sheriff to "endorse on the writ the exact hour and date of its receipt and maintain a record of actions taken pursuant to it." From this the court discerned that the moment of receipt is key in determining at what point a writ is executed.

## II.

### A.

Petitioners first note the fundamental premise that a joint tenancy must be severed in order for a judgment creditor to

---

**3.** Maryland Rule 3-641(c) provides:

Transmittal to sheriff; bond. Upon issuing a writ of execution or receiving one from the clerk of another county, the clerk shall deliver the writ and instructions to the sheriff. The sheriff shall endorse on the writ the exact hour and date of its receipt and shall maintain a record of actions taken pursuant to it. If the instructions direct the sheriff to remove the property from the premises where found or to exclude others from access to or use of the property, the sheriff may require the judgment creditor to file with the sheriff a bond with security approved by the sheriff for the payment of any expenses that may be incurred by the sheriff in complying with the writ.

attach the interest of an individual joint tenant. Petitioners maintain that an individual judgment debtor's interest is severed when a judgment creditor executes against the judgment debtor's interest in real property while he or she is living. Once the judgment debtor has died, however, there is no longer an interest in the real property upon which to levy.

On the facts of the present case, Petitioners contend that the mere delivery of the Writ of Execution to the Sheriff did not sever the joint tenancy or create a lien on the Property. Because the Sheriff did not attempt to execute the writ until after the death of the Judgment Debtor, they claim that there was no pre-mortem severance of the joint tenancy and thus no property interest to which the lien could attach when ultimately executed. As the interest of one joint tenant passes to the other joint tenant or tenants at his or her death as a matter of law, Petitioners ultimately posit that they acquired the Judgment Debtor's interest in the Property at her death and that, from that moment forward, the Judgment Debtor held no interest to which Respondent's lien later could attach.

Petitioners support their argument by citing, *inter alia,* *Eder v. Rothamel,* holding that "a judgment lien, without levy or execution on the judgment, does not sever a joint tenancy or prevent the interest of the judgment debtor from passing to or ripening in the surviving co-tenants, free of lien." 202 Md. 189, 193, 95 A.2d 860, 862 (1953). Petitioners also direct our attention to various cases of our sister states purporting to hold that something more than a judgment lien is necessary to sever a joint tenancy. Recognizing that these cases are not binding on this Court, Petitioners argue that these cases nonetheless merit our favorable consideration. *See, e.g.,* *Grothe v. Cortlandt Corp.,* 11 Cal.App.4th 1313, 15 Cal.Rptr.2d 38 (1992) (lien does not sever joint tenancy); *People's Trust & Savings Bank v. Haas,* 328 Ill. 468, 160 N.E. 85 (1927) (judgment alone does not sever joint tenancy); *Van Antwerp v. Horan,* 390 Ill. 449, 61 N.E.2d 358 (1945) (levy does not transfer possession of real property to the sheriff and therefore does not sever a joint tenancy); *Knibb v. Security Ins.*

*Co.*, 121 R.I. 406, 399 A.2d 1214 (1979) (judicial sale of real property is necessary to sever joint tenancy).

### B.

■ Respondent concedes, as it must, that a joint tenancy first must be severed in order to levy upon one joint tenant's interest in the Property; however, it contends in the present case that a severance occurred at the moment the Sheriff received the Writ of Execution from the Clerk's office. Accordingly, Respondent claims that the Property was levied upon properly when the Sheriff received the writ nearly a month before the Judgment Debtor died. Respondent argues that an inchoate lien was created when the Sheriff received the writ, and that the date of execution of the writ "relates back" to 20 November 2001, provided that the Sheriff perfected the writ within the statutory period by executing it. Respondent urges us to adopt the following policy rationale for implementing such a "writ in the mitt" rule: The effective execution of a writ is not dependent on actual delivery to that person or posting on the property because the "modern" sheriff plays only a ministerial role in transmitting the writ to the owner of the interest in the property. Adoption of his policy, Respondent contends, would eliminate the harm befalling a creditor who files first, but whose interest is levied last by the Sheriff. Such a policy also would reduce the incentive for a creditor to offer inducements and cajolery to sheriffs to execute its writs first.

Respondent directs our attention to *American Security & Trust Co. v. New Amsterdam Casualty Co.* to support its argument that the date of the levy relates back to the date the writ was delivered to the Sheriff. 246 Md. 36, 40, 227 A.2d 214, 215 (1967). In *American Security,* the sheriff took possession of an automobile in execution of a writ he received a month before. In upholding the sheriff's sale of the automobile to satisfy a judgment debt, despite the fact that it had been used to secure a loan to its owner during the period between delivery and execution of the writ, this Court held that "the lien of an execution has as its effective date, not the

day on which the levy was actually made, but the day on which the writ ... was delivered to the sheriff." *Id.* In this manner, the Court explained, the claims of competing creditors could be prioritized according to the date the sheriff received the writ. *Id.*

## C.

In response, Petitioners attempt to distinguish a levy on personal property from a levy on real property as a means to discredit Respondent's "relation back" argument. Petitioners assert that *American Security* is not analogous to the instant case because real property is treated differently than personal property for such purposes in Maryland. Petitioner notes that our precedents hold that, for real property, the delivery of the writ to the sheriff, without any further action to execute it, is insufficient to levy on real property. *Rothamel*, 202 Md. at 195, 95 A.2d at 863. Petitioners also assert that the "relation back" concept exists, if at all, to prioritize claims among competing creditors, and thus is inapposite to the case of a single creditor, as here.

## III.

■ On appellate review, the Court of Appeals may set aside the judgment of the lower court based on the factual findings of the lower court only when those findings are clearly erroneous. Maryland Rule 8–131(c).[4] The legal analysis of the lower court, however, enjoys no deferential appellate review. The Court of Appeals must apply the law as it discerns it to be. *Heat & Power Corp. v. Air Products & Chemicals, Inc.*, 320 Md. 584, 591, 578 A.2d 1202, 1205 (1990).

---

4. Maryland Rule 8–131(c) provides:

Action tried without a jury. When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The issue before the Court in the present case falls under the latter standard of review.

## A.

 Although many states have abolished it entirely, Maryland continues to recognize by statute the joint tenancy form of real property ownership. Maryland Code (1974, 2003 Repl.Vol.), Real Property Article, § 2–117.[5] A joint tenancy is distinguished by the "four unities." In order for a joint tenancy to exist, the owners of the property must share unity of time, title, interest, and possession. *Rothamel,* 202 Md. at 192, 95 A.2d at 862. The unities must exist concurrently; if any one is missing, the estate cannot be one of joint tenancy. *Id.* We will consider the requirements of the four unities at greater length *infra.*

### 1.

In *Eastern Shore Bldg. and Loan Corp. v. Bank of Somerset,* we addressed the question of whether a joint tenancy must be severed in order for a lien to attach to the interest of an individual joint tenant. 253 Md. 525, 253 A.2d 367 (1969). In *Eastern Shore,* a judgment was entered against one joint tenant's interest in real property to satisfy a judgment against him for defaulting on a bank loan. The joint tenants then sold the property. The bank subsequently obtained a writ of *fieri facias* to direct the sheriff to levy on the property in order to collect on the debt the joint tenant owed. In finding that there was no time at which the debtor-joint tenant's interest in the property was severed from that of the other joint tenant, we held that his interest could not have been levied upon. 253 Md. at 531, 253 A.2d at 371. We held further that joint

---

5. Maryland Code (1974, 2003 Repl.Vol.), Real Property Article, 2–117 provides:

> Presumption against joint tenancy. No deed, will, or other written instrument which affects land or personal property, creates an estate in joint tenancy, unless the deed, will, or other written instrument expressly provides that the property granted is to be held in joint tenancy.

tenants hold *per my et per tout*,[6] and that "the nature of the tenancy is such that the judgment lien cannot attach to the estate in joint tenancy until after the severance and the creation of a separate estate in title and possession to which the judgment lien can *then* attach." *Id.* (citing *Alexander v. Boyer*, 253 Md. 511, 253 A.2d 359 (1969) (emphasis in original)). We concluded that

> *there was no execution* by the judgment creditor prior to the conveyance by the joint tenants, nor was there any contract of sale or lease by one joint tenant or other action ... *which might possibly result in a severance of the joint tenancy prior to the conveyance.* That conveyance, it is true, terminated the joint tenancy, but simultaneously with the conveyance, title to the subject property vested in the grantees in fee simple. There was never a time, therefore, that Otho and William [the joint tenants] ever held title to the subject property as tenants in common so that there was no estate in the land which Otho [the debtor-joint tenant], alone, held in severalty to which the lien of a judgment against him alone could attach.

253 Md. at 531, 253 A.2d at 370–71 (emphasis added). Without severance of the joint tenancy, there is no individual interest of a joint tenant to which a judgment lien may attach. Severance of a joint tenancy therefore is required in order for a judgment creditor to levy on the interest of an individual joint tenant.

### 2.

 Severance of a joint tenancy occurs when one of the four unities of time, title, interest, and possession ceases to exist. *Rothamel*, 202 Md. at 192, 95 A.2d at 862. This may happen voluntarily (*e.g.,* through conveyance by one of the joint tenants) or involuntarily (*e.g.,* by court partition). *Id.* When a joint tenancy is severed, the co-tenants become tenants in common. *Id.*

---

6. "by the half and by the whole".

■ Recognition of the moment at which one of the unities is destroyed, thereby severing a joint tenancy, varies by jurisdiction. As we recognized in *Rothamel,* however, "[t]here is complete agreement ... in all jurisdictions that (a) the levy and completed sale in execution does sever the joint tenancy, and (b) the mere obtention or docketing of a judgment lien does not operate to sever the joint tenancy." 202 Md. at 193, 95 A.2d at 862. We observed that "the general rule that a judgment lien will not sever the tenancy is consistent with the common law theory that the mere creation of a lien or charge upon the property would not diminish or affect any unity or a joint tenancy." 202 Md. at 195, 95 A.2d at 863. We also noted that "[i]n every reported case, it has been held that a judgment lien, without levy or execution on the judgment, does not sever a joint tenancy or prevent the interest of the judgment debtor from passing to or ripening in the surviving co-tenants, free of lien." *Id.*

In *Rothamel,* the plaintiff-creditor obtained a judgment against a debtor-joint tenant, who then died before execution of the judgment. 202 Md. at 190, 95 A.2d at 861. The surviving joint tenants then conveyed the property to a third party, and the plaintiff sued both the estate of the late joint tenant and the new owners of the property to recover the judgment debt. *Id.* In holding that a judgment lien alone does not sever a joint tenancy because it does not interfere with any of the four unities, we opined that the lien must be executed within the lifetime of the judgment debtor in order for the judgment creditor to levy on the property. 202 Md. at 195, 95 A.2d at 863. Because the lien had not been so executed, the unities remained intact, and the joint tenancy was not severed. The surviving joint tenants thus rightly conveyed their interest in the property to the third party free of the lien. *Id.* Applying that reasoning to the present case, the writ at least must be executed actually in order to sever a joint tenancy; mere delivery of the writ to the sheriff, unless the date of execution relates back to the date of delivery, is not sufficient to sever the joint tenancy.

### 3.

We are of the view that the mere delivery of the Writ of Execution to the Sheriff did not interfere with any of the four unities and thus did not sever the joint tenancy in the present case. There is nothing in the record which indicates that the unities of time and title were affected by delivery of the writ to the Sheriff. By definition, the unity of time means that the joint tenants held title to the Property at the same moment. Delivery of the writ to the Sheriff would have had no effect on that unity. Likewise, as the unity of title requires that joint tenants acquire and hold title to the property by the same conveyance, delivery of the writ to the Sheriff would not have altered the fact that the Petitioners and the Judgment Debtor acquired and held title to the Property by the same instrument.

Delivery of the writ to the Sheriff also did not interfere with the unity of interest. As Petitioners point out, the Supreme Court of Rhode Island held that even a levy on real property is not enough to sever a joint tenancy, and that an actual sale must occur in order to destroy the unity of interest. *Knibb v. Security Insurance Co. of New Haven*, 121 R.I. 406, 411, 399 A.2d 1214, 1217 (1979). There, the Supreme Court of Rhode Island concluded that an estate held in joint tenancy was not severed by a levy of execution against one tenant's undivided half interest in the property to satisfy a judgment against that tenant, and that, after that joint tenant's death, the property passed to the surviving joint tenant free of the judgment. *Id.* Because no judicial sale had occurred prior to the death of the decedent, the court found that the defendant-judgment creditor's lien on the property constituted a mere "expectation of title" and that this expectation did nothing to alter the interest of either the decedent or the surviving joint tenant. 121 R.I. at 411–12, 399 A.2d at 1217. Finding that none of the unities was destroyed prior to the death of one joint tenant, the court held that the joint tenancy was not severed by the levy alone, and that a judicial sale was necessary to destroy the unity of interest and sever the joint tenancy. *Id.*

■ We agree with the logic of the Supreme Court of Rhode Island (though in the present case we need not go as far as that court did in application), and hold that the delivery of the writ to the Sheriff did not interfere with the interest of the Petitioners and the Judgment Debtor in the Property. In the case of real property, a writ of execution functions as an instruction to the sheriff to go to the property in question and inform its inhabitants that it will be sold to satisfy a judgment owed. By going to the property and delivering such notice, the sheriff executes the writ and levies on the property, formally attaching it for sale at a later date. It is difficult to see how simply instructing the sheriff to tell the owners of a piece of real property that their land will be sold to satisfy a judgment against one of the owners interferes with the interest the owners *currently* have in the property. Until the property is actually sold, the landowners interest in the property does not change. Due to the fact that, in the present case, the Sheriff received the writ but did not execute it before the death of the Judgment Debtor, we conclude that certainly there was no interference with the interest of either the Judgment Debtor or the Petitioners in the Property. We are not called upon to decide today whether a different result would obtain had the Sheriff executed the writ before the Judgment Debtor's death.

We also conclude that delivery of the writ to the Sheriff had no effect on the Judgment Debtor's possession of the Property. This Court repeatedly has held that, for personal property, delivery of a writ of execution to the sheriff constitutes a levy and is sufficient to place the goods in question in the virtual custody of the law. *American Security and Trust Co. v. New Amsterdam Casualty Co.*, 246 Md. 36, 39, 227 A.2d 214, 216 (1967). Likewise, we have held that, for personal property, "the time of the levy ... is not controlling, but the time of the delivery of the writ to the Constable is crucial." *Harris v. Max Kohner, Inc.*, 230 Md. 349, 354, 187 A.2d 97, 100 (1963).

We believe, however, that the nature of real property is distinguishable from that of personalty in this regard, and that the mere delivery of the writ to the sheriff does not interfere with a joint tenant's possession of real property. As the California Court of Appeal observed, the levy of personal property constitutes a physical seizure of the goods. *Grothe v. Cortlandt Corporation*, 11 Cal.App.4th 1313, 1321, 15 Cal. Rptr.2d 38 (1992). In *Grothe*, the court held that where the judgment debtor-joint tenant died after a judgment creditor's levy on his real property, but before a judicial sale occurred, none of the four unities was destroyed and the joint tenancy was not severed. The court distinguished a levy of personal property, which involves actual seizure, noting that an actual seizure clearly interferes with the owner's possession of the property. 11 Cal.App.4th at 1321, 15 Cal.Rptr.2d 38. By contrast, a levy of real property denotes the setting aside of property to be taken or sold at a later date and does nothing to interfere with the owner's current possession. 11 Cal. App.4th at 1320, 15 Cal.Rptr.2d 38. Consequently, the court decided that "the 'levy,' as opposed to the ultimate sale of the property, does not destroy the unities any more than any other kind of lien against a specific property." 11 Cal.App.4th at 1321, 15 Cal.Rptr.2d 38.

We agree with the *Grothe* court's analysis and hold that the delivery of the writ does not destroy the unity of possession. During the period between 20 November 2001, when the Sheriff received the writ, and 17 January 2002, when he went to the Property and attempted to execute on the writ, there was no interference with either the Judgment Debtor's or the Petitioners' possession of the Property. Both the Judgment Debtor and the Petitioners remained in actual possession of the land and retained all of the rights with respect to the Property that land ownership implies. When the Judgment Debtor died, her interest in the Property passed to the surviving joint tenants, with whose possession of the Property the sheriff did not attempt to interfere until he arrived on 17 January 2002 to attempt to levy on the Property. We con-

clude that the unity of possession was not destroyed by the delivery of the writ to the Sheriff.

## IV.

Ultimately, we hold that upon the death of the Judgment Debtor, her estate passed to the Petitioners, the surviving joint tenants, free of Respondent's lien. At least one of the four unities must be destroyed in order to sever a joint tenancy, but no such destruction occurred here until the Judgment Debtor died. Mere delivery of the Writ of Execution to the Sheriff did not interfere with the unities of time, title, interest, or possession, and thus may not be said to have severed the joint tenancy.

JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS THAT IT REVERSE THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND, SITTING IN HARFORD COUNTY, AND REMAND THE CASE TO THAT COURT WITH DIRECTIONS TO GRANT PETITIONERS' MOTION TO RELEASE PROPERTY FROM LEVY; COSTS TO BE PAID BY RESPONDENT.