835 A.2d 1197

**FRIENDLY FINANCE CORPORATION**

v.

**ORBIT CHRYSLER PLYMOUTH DODGE TRUCK, INC.**
**t/a Darcars Chrysler Plymouth Jeep Eagle.**

**No. 18, Sept. Term, 2003.**

Court of Appeals of Maryland.

Nov. 18, 2003.

338

**340**

Paul J. Donovan, Baltimore (Steven L. Tiedemann, Davis, Agnor, Rapaport & Skalny, LLC, Columbia, on brief), for petitioner.

Brent M. Ahalt (John P. Lynch, McNamee, Hosea, Jernigan, Kim, Greenan & Walker, P.A., Greenbelt, on brief), for respondent.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

HARRELL, J.

Respondent, Orbit Chrysler Plymouth Dodge Truck, Inc. (Orbit), is, for the purposes of this case, a garage in possession of a motor vehicle subject to a garageman's lien. The vehicle's owner failed to pay Orbit for the repair work and services that gave rise to the lien. Orbit intends to sell the vehicle, as authorized by Md.Code (1975, 2000 Repl.Vol.), § 16–207 of the Commercial Law Article,[1] in order to recover the value of the services rendered.

Petitioner, Friendly Finance Corporation (Friendly), is a lender holding a purchase money security interest in the

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Unless otherwise indicated, all statutory references in this opinion are to Maryland Code (1975, 2000 Repl.Vol.), Commercial Law Article.

motor vehicle that was perfected before Orbit came into possession of the vehicle. The vehicle's owner defaulted on the purchase loan and Friendly, in this replevin action, seeks to forestall Orbit's sale of the vehicle and to take possession of the vehicle without having to pay Orbit for its repair services.

Because the General Assembly intended the holder of a garageman's lien to have priority of possession over any holders of perfected security interests in a motor vehicle when the holder of the garageman's lien intends to conduct a statutory sale of the vehicle under § 16–207, we shall affirm the judgments of the District Court of Maryland, sitting in Prince George's County, and the Circuit Court for Prince George's County, each holding that Friendly is not entitled to possession and that Orbit may complete its statutory sale of the vehicle.

### Undisputed Facts

On 31 August 2000, Israel Atkins bought a red, previously owned, 1998 Plymouth Neon four-door sedan. He financed the purchase of the vehicle with a loan provided by Friendly and secured by the vehicle. That loan, a Maryland Closed–End Credit and Security Agreement, was perfected in Washington, D.C. on the same day.

Orbit performed significant repairs and maintenance on the vehicle at Atkins's request in April 2001. Atkins did not pay Orbit for the repairs, and Orbit became the holder of a garageman's lien[2] for charges that eventually added up to $2,137.21: $1,162.21 in unpaid repairs (after payments under a mechanical repair contract were deducted), $300 in storage charges, and $675 in lien expenses. Atkins defaulted on his purchase money loan from Friendly and, on 5 November 2001, he informed Friendly that Orbit had possession of the vehicle.[3]

---

**2.** The garageman's lien came into force as soon as Orbit began to work on the vehicle. § 16–202(c)(2) ("A lien is created . . . when any charges [for repairs or service] giving rise to the lien are incurred.").

**3.** The record is not clear about exactly when Atkins defaulted on his loan from Friendly, but it appears to have been sometime after he

Friendly filed in the District Court, on 29 November 2001, a replevin action to gain possession of the vehicle from Orbit without paying the charges due to Orbit. Orbit responded by asserting its garageman's lien and seeking dismissal of Friendly's action.

The District Court interpreted Title 16 of the Commercial Law Article to provide that a garage's right to possession pending sale is absolute unless or until either (1) the repair bill is paid or (2) the lien is discharged through some other statutory means. Finding that Orbit's repair bill had not been paid and that none of the statutory provisions by which the lien could be discharged were applicable, the court held that Orbit's right to possess the vehicle and its right to sell the vehicle were superior to Friendly's right to possession. It dismissed Friendly's replevin action. On direct appeal, the Circuit Court affirmed. We granted Friendly's petition for certiorari, *Friendly Finance v. Orbit,* 374 Md. 358, 822 A.2d 1224 (2003), to consider the following questions (rephrased for clarity):

1. Is a garageman's lien on a motor vehicle subordinate to a previously perfected purchase money security interest if the garage intends to conduct a statutory sale of the vehicle under § 16–207?

2. Is the holder of a previously perfected purchase money security interest an "owner" within the meaning of that term as used in § 16–208 (Replevy of property by owner)?

*Standard of Review*

The Court of Appeals will set aside the judgment of a court based on the factual findings of that court only when those findings are clearly erroneous. Maryland Rule 8–131(c).[4] The relevant facts in this case are not in dispute. The legal analysis of the District Court and of the Circuit

---

delivered the vehicle to Orbit in April 2001, and before he informed Friendly of its location on 5 November 2001.

**4.** Maryland Rule 8–131(c) provides:

Court, however, enjoy no deferential standard of appellate review. *Helinski v. Harford Memorial Hosp., Inc.,* 376 Md. 606, 614–15, 831 A.2d 40, 45 (2003). We review *de novo* their interpretations of the relevant statutes.[5]

## Principles of Legislative Interpretation

In order properly to interpret a statute, a court must ascertain and effectuate the intent of the Legislature. *MVA v. Lytle,* 374 Md. 37, 50, 821 A.2d 62, 70 (2003). A reasonable statutory construction is one that is consistent with the purpose, aim or policy of the Legislature reflected in the statute. *Id.* Statutory analysis begins with the plain meaning of the words of the statute. When those words are clear and unambiguous, and the result is not absurd, no further inquiry into legislative intent is required. *See Lytle,* 374 Md. at 57, 821 A.2d at 73; *Medex v. McCabe,* 372 Md. 28, 38, 811 A.2d 297, 303 (2002). When there is some ambiguity in the meaning of statutory language or when the language conflicts with the

---

When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

5. These are the same standards of review that Circuit Courts, following Maryland Rule 7–113(f) in cases such as the present one, should apply when they review District Court judgments. The Circuit Court in this case, however, may have applied a "clearly erroneous" standard to its review of the District Court's legal analysis. We glean this from the fact that, in its written opinion, the Circuit Court made reference only to the deferential clearly erroneous standard. Maryland Rule 8–131(c) has nearly identical language to Rule 7–113(f) regarding the scope of appellate review, and cases interpreting Rule 8–131(c) are persuasive regarding Rule 7 113(f). *See Ryan v. Thurston,* 276 Md. 390, 347 A.2d 834 (1975) (cases applying former Rule 886, which was substantially similar to current Rule 8–131(c), are controlling authority governing interpretation of former Rule 1386, which was substantially similar to current Rule 7–113(f)). Under Rule 8–131(c), clear error is the proper standard for review of the evidence, but it is not the proper standard for questions of law, which are reviewed *de novo. See Helinski,* 376 Md. at 614–15, 831 A.2d at 45. Because we agree that the District Court's legal analysis was correct, the Circuit Court's possible application of the incorrect standard of review was harmless error if it was error at all.

larger statutory scheme, the statutory language must be construed in light of and governed by its context within the overall statutory scheme. *Lytle*, 374 Md. at 57, 821 A.2d at 73. The legislative history or other sources extraneous to the statute itself may shed light on the legislative intent. *McCabe*, 372 Md. at 38, 811 A.2d at 303.

## Analysis

The District Court's bases for concluding that Orbit was entitled to retain possession of the vehicle were twofold, each interpreting different provisions of Title 16 of the Commercial Law Article of the Maryland Code. The first was that a motor vehicle lien held by a garage under §§ 16–202(c) [6] and 16–203(a) [7] enjoys priority over a previously perfected purchase money security interest in the vehicle if the garage demonstrated an intention to sell the car under § 16–207. [8] The second was that only an "owner" could file a § 16–208 [9]

---

**6.** § 16–202(c) provides:

*Motor vehicle lien.*

(1) Any person who, with the consent of the owner, has custody of a motor vehicle and who, at the request of the owner, provides a service to or materials for the motor vehicle, has a lien on the motor vehicle for any charge incurred for any:

(i) Repair or rebuilding;

(ii) Storage; or

(iii) Tires or other parts or accessories.

(2) A lien is created under this subsection when any charges set out under paragraph (1) of this subsection giving rise to the lien are incurred.

**7.** § 16–203(a) provides:

*Retention of possession.*

The lienor may retain possession of the property subject to the lien until:

(1) The charges which give rise to the lien are paid; or

(2) The lien is otherwise discharged in accordance with this subtitle.

**8.** "If the charges which give rise to a lien are due and unpaid for 30 days and the lienor is in possession of the property subject to the lien, the lienor may sell the property to which the lien attaches at public sale." § 16–207(a).

**9.** "If the owner of property subject to a lien institutes an action of replevin and establishes a right to the issuance of a writ but for the

replevin action in order to gain immediate possession of a motor vehicle held subject to a garageman's lien, and that Friendly was not an "owner" within the meaning of that term as used in the statute. Friendly argues that these were each misinterpretations of the statute.

I

The Maryland General Assembly, when it enacted the provisions relating to garageman's liens, envisioned the statute would operate according to the following sequence of events:

(1) The owner in possession of the motor vehicle takes it (or has it towed) to the garage and requests that it be repaired. § 16–202(c)(1).

(2) The garage performs the requested repairs, creating a lien in favor of garage for the repair bill, and bills the owner. § 16–202(c)(2)(i).

(3) The owner fails to pay the bill.

(4) The garage stores the vehicle, creating a lien in favor of the garage for storage costs. § 16–202(c)(1)(ii).

(5) The garage retains possession of the vehicle until either the charges are paid or the lien is otherwise discharged. § 16–203(a).

(6) The garage, within 30 days of the creation of the lien, sends notice of the lien to all holders of perfected security interests. § 16–203(b)(1)(i).[10]

(7) If the bill remains unpaid for 30 days, the garage, at its option, may initiate a public sale of the vehicle. § 16–207(a).

_____

defendant's alleged lien under this subtitle, the court shall issue the writ." § 16–208(a).

**10.** § 16–203(b)(1)(i) provides:

[W]ithin 30 days after the creation of a lien ... the lienor shall send notice of the lien by registered or certified mail to all holders of perfected security interests in the property who:

    1. Are known to the lienor; or

    2. Can be identified through a search of the public records where filings are made to perfect security interests in the property.

(8) The garage sends notice, at least 10 days prior to sale, to the owner, all holders of perfected security interests, and the Motor Vehicle Administration.[11] § 16–207(b)(2).[12]

(9) The garage publishes notice once a week for the two weeks immediately preceding the sale in one or more newspapers of general circulation in the county where the sale is to be held. § 16–207(b)(1).[13]

(10) The garage sells the vehicle. § 16–207.

(11) Proceeds of sale are applied as follows: § 16–207(e)(1).[14]

---

**11.** The statute requires that notice be given to the "Motor Vehicle Administration." § 16–207(b)(2)(i). This appears to be a reference to the Maryland Motor Vehicle Administration. There is no indication from the statute that any notice need be filed in any other administrative office where the vehicle may be titled, such as the Department of Motor Vehicles of the District of Columbia in this case.

**12.** § 16–207(b)(2) provides:
[T]he lienor shall send the notice by registered or certified mail at least 10 days before the sale to:
(i) The owner of the property, all holders of perfected security interests in the property and, in the case of a sale of a motor vehicle or mobile home, the Motor Vehicle Administration;
(ii) The person who incurred the charges which give rise to the lien, if the address of the owner is unknown and cannot be ascertained by the exercise of reasonable diligence; or
(iii) "General delivery" at the post office of the city or county where the business of the lienor is located, if the address of both the owner and the person who incurred the charges is unknown and cannot be ascertained by the exercise of reasonable diligence.

**13.** "The lienor shall publish notice of the time, place, and terms of the sale and a full description of the property to be sold once a week for the two weeks immediately preceding the sale in one or more newspapers of general circulation in the county where the sale is to be held." § 16–207(b)(1).

**14.** § 16–207(e)(1) provides:
[T]he proceeds of a sale under this section shall be applied, in the following order, to:
(i) The expenses of giving notice and holding the sale, including reasonable attorney's fees;
(ii) Subject to subsection (f) of this section, storage fees of the third party holder;
(iii) The amount of the lien claimed exclusive of any storage fees except as provided in [§ 16–207(f)(2)];

i. Expenses of the sale. § 16–207(e)(1)(i).

ii. Third-party storage fees. § 16–207(e)(1)(ii).[15]

iii. The lien claim for garage repair and storage bills. § 16–207(e)(1)(iii).

iv. Any purchase money security interest. § 16–107(e)(1)(iv).

v. Any remaining secured parties of record. § 16–107(e)(1)(v).

vi. Any remaining balance to the owner. § 16–107(e)(4).[16]

■ By its own admission, Orbit did not follow one of these steps. Specifically, it failed to give the notice required by § 16–203(b) to Friendly, the holder of a perfected purchase money security interest in the vehicle.[17] The penalty for this omission, however, is laid out clearly in § 16–207(e)(3): if the notice required under § 16–203(b) is not sent, the garage may not recover any amount for storage charges incurred or imposed pursuant to § 16–202(c)(1)(ii).[18] The failure to give

---

(iv) A purchase money security interest; and
(v) Any remaining secured parties of record who shall divide the remaining balance equally if there are insufficient funds to completely satisfy their respective interests, but not to exceed the amount of a security interest.

**15.** "If property is stored, storage fees of the third party holder may not exceed $5 per day or a total of $300." § 16–207(f)(1).

**16.** "After application of the proceeds in accordance with [§§ 16–207(e)(1) or (e)(2)], any remaining balance shall be paid to the owner of the property." § 16–207(e)(4).

**17.** Orbit could have discovered Friendly's interest in the vehicle by reviewing the vehicle's title in the District of Columbia. The fact that the vehicle was titled in the District of Columbia should have been apparent readily from its D.C. license plates, which Orbit duly noted in its 23 April 2002 " 'Notice of Sale' of Motor Vehicle to Satisfy Lien."

**18.** § 16–207(e)(3) provides:
For a motor vehicle lien created under this subtitle, if the notice required under § 16–203(b) of this subtitle was not sent:
(i) The proceeds of a sale under this section shall be applied in the order described in [§ 16–207(e)(1)]; and
(ii) The amount of the lien claimed in [§ 16–207(e)(1)(iii)] of this subsection may not include any amount for storage charges incurred or imposed by the lienor.

notice does not affect the § 16–202(c)(2)(i) lien for the repair bill. Orbit would be entitled to sell the car and recover the expenses of the sale and the value of the repairs notwithstanding its failure to give the § 16–203(b) notice to Friendly.[19] Orbit otherwise followed the statutory requirements in establishing and maintaining its statutory garageman's lien.

■ The holder of a garageman's lien need not relinquish possession of the vehicle prior to sale unless either the charges that give rise to the lien are paid or the lien is "otherwise discharged in accordance with this subtitle." § 16–203(a). In the present case, the charges have not been paid. The means by which a lien may be "otherwise discharged in accordance with this subtitle" are (1) surrender or delivery of the property by the garage under § 16–204 (Effect of surrender of possession); (2) the filing of a bond by the owner under § 16–206 (Proceedings if charge disputed); (3) sale by the garage under § 16–207 (Unpaid account settled by public sale; applicability of notice requirements); or (4) replevin by the owner under § 16–208 (Replevy of property by owner).

■ Friendly cites § 16–205(b) as the basis for its right to possession of the vehicle. "A motor vehicle [garageman's] lien is subordinate only to a security interest perfected as required by law, except in the case of a motor vehicle sold under § 16–207 of this subtitle."[20] § 16–205(b). If not for the reference to

---

**19.** , Any perception of ambiguity in the language of these provisions is quickly eliminated by a review of the legislative history. The relevant language was added in 1992. 1992 Md. Laws, Chap. 595. The 1992 amendment, as it was originally drafted, was intended to encourage lienholders to give notice of their liens by providing that failure to give such notice would make their liens subordinate to previously perfected security interests. Before the 1992 amendment was passed, it was itself amended to add § 16–207(e)(3). The new language limited the penalty for failure to give notice of a garageman's lien to loss of priority for storage fees. *Id. See also* Explanation of Maryland Bankers Association Amendments to Senate Bill No. 1209 (sic—the bill was HB 1209) ("Amendment No. 7 ... provides that, as to motor vehicles, if the garage man fails to send the notice called for under the bill, he only looses (sic) his priority as to storage charges, not the repair bill.").

**20.** Friendly also argues it is entitled it to repossess the car based on § 12–1021 ("A credit grantor may repossess tangible personal property securing a loan ... if the consumer borrower is in default.").

§ 16–207, it would appear that § 16–205(b) conflicts with § 16–203(a). On the one hand, § 16–205(b) is not one of the means by which the garageman's lien may be discharged according to § 16–203(a). On the other hand, § 16–205(b) seems to make Orbit's motor vehicle lien subordinate to Friendly's perfected security interest. It is our view, however, that the reference to § 16–207 in § 16–205(b) gives a garageman with such a lien priority of possession over the holders of perfected security interests when the garage intends to sell the vehicle under § 16–207, but makes garageman's liens subordinate to perfected security interests in all other situations.

Friendly argues that the use of the past tense in § 16–205(b) ("sold") indicates a legislative intent to give the garageman's lien priority over perfected security interests *only if* the § 16–207 statutory sale has been completed. On the contrary, the Legislature intended the garage to retain priority of possession throughout the process leading to a § 16–207 sale.

The word "sold" in § 16–205(b) originally was meant to be read in the conditional present tense rather than in the past tense. The reference to § 16–207 was added to § 16–205(b) by amendment in 1982. 1982 Md. Laws, Chap. 890. The original bill would have amended § 16–205(b) to read: "A boat lien or motor vehicle lien is subordinate only to a security interest perfected as required by law, except when sold pursuant to § 16–207 of this article." The Legislature amended the bill before its enactment. The version that the Legislature enacted read: "A boat lien or motor vehicle lien is subordinate only to a security interest perfected as required by law, except in the case of a motor vehicle lien when a vehicle is sold pursuant to § 16–207 of this article." Each version employed conditional language: "when sold" and "when a vehicle is sold." The version that the Legislature enacted contained the word "is," confirming that the statute was to be read in the present tense.

The fact that the Legislature used the phrase "when a vehicle is sold," rather than "when a vehicle has been sold," is

persuasive evidence that it intended to extend the garage's special priority over all other lienholders to embrace the entire process leading to a § 16–207 sale. Although the statute was amended in 1986 to remove the conditional language, 1986 Md. Laws, Chap. 418, the 1986 amendment seems to have been intended to remove the unnecessary redundancy of the word "vehicle" and generally to shorten the provision. The resulting language could be read in either the conditional present tense or the past tense, but it does not appear that the Legislature intended in 1986 to change the tense. The statute's tense has not been changed since.

This conclusion is confirmed by our review of the rest of the statute. Section 16–207 quite clearly gives garageman's liens priority over perfected security interests after the sale's completion, so the reference to § 16–207 in § 16–205(b) would become surplusage if it only applied after a sale was completed. We consistently have noted that statutory interpretations that result in surplusage or meaningless language should be avoided. *See Eng'g Mgmt. Servs. v. Md. State Highway Admin.*, 375 Md. 211, 224, 825 A.2d 966, 974 (2003). Section 16–207(d) gives the purchaser of a vehicle sold in a § 16–207 statutory sale the right to title "free and clear of any lien." Sections 16–207(e)(1) and (e)(3) give the holder of a garageman's lien for repair work on a motor vehicle priority in the distribution of the sale's proceeds over any perfected security interest holder. There would be no need to make an exception for § 16–207 in § 16–205(b) if the Legislature had intended that exception to apply only after the sale was completed because the parties' respective positions after a statutory sale already are clear in § 16–207. The reference to § 16–207 only has separate meaning if it applies throughout the course of carrying out a statutory sale.

The Legislature's choice to grant priority so that a garage may recover the value of repairs it performed on a vehicle is a sensible one objectively as well. The garage has added value to the vehicle. A secured interest holder would receive a windfall if it were to obtain the right to possess and sell the

vehicle without first paying the garage's repair bill. For example, in this case Orbit replaced a leaking head gasket and a substantial portion of the front suspension, along with performing several other repairs. It also performed routine maintenance, such as changing the oil and aligning the front wheels. It is fair to say that the vehicle was worth more after the repairs than at the condition it was in at the time Atkins brought it to Orbit.[21]

## II

▉ Friendly sought a writ of replevin under § 16–208.[22] Issuance of such a writ would discharge the garageman's lien and Friendly would be entitled to possession.[23] Section 16–

---

**21.** Friendly alleged in its District Court replevin action that the "average retail value of said automobile is $5,950.00, and the average wholesale value is $4,550.00." What the vehicle's value would have been absent Orbit's repairs is not revealed in the record. It is interesting to note that Friendly also claimed that the amount due on the defaulted loan was $17,748.29, a sum it sought as damages from Orbit in the suit.

**22.** § 16–208 provides:
(a) Issuance of writ.
If the owner of property subject to a lien institutes an action of replevin and establishes a right to the issuance of a writ but for the defendant's alleged lien under this subtitle, the court shall issue the writ.
(b) Trial of replevin action.
  (1) In the trial of the replevin action, the court shall determine:
  (i) The amount of the lien claim, if any; and
  (ii) The amount of any expenses properly incurred or accrued before the trial, including storage and advertising.
  (2) If judgment is for the defendant:
  (i) It may include reasonable attorney's fees; and
  (ii) It shall be either for the property replevied or for the amounts determined in accordance with paragraph (1) of this subsection.
  (3) The defendant has the burden of proof to establish his lien claim to the same extent as if he were a plaintiff in an action to secure judgment on an open account.

**23.** It is not clear that § 16–208 would allow Friendly to gain possession of the vehicle without paying the charges that gave rise to Orbit's lien. It is true that § 16–208 provides for the immediate grant of a writ of replevin in favor of the "owner" and that the garageman's lien be discharged. Section 16–208, however, also provides for the garage-defendant to obtain a judgment for the amount of the lien claim and for its expenses. If Friendly were regarded as an "owner" entitled to

208, however, is only available to "the owner of the property." Friendly is not the owner of the vehicle, but is rather the holder of a secured interest in the vehicle. Accordingly, Friendly is not entitled to replevin under § 16–208.[24]

Title 16 of the Commercial Law Article includes a broad and open-ended definition of the term "owner:" " '[o]wner' includes a person lawfully in possession." § 16–101. The statute offers no further explicit elaboration; however, when considered in its varying contexual usages within the statutory scheme,[25] the word "owner" assumes different meanings in different contexts. So considered, the use of that word within the context of Title 16 makes clearer its meaning.

The Legislature treats owners and perfected security interest holders quite differently throughout Title 16, indicating its intention that the term "owner" not include perfected security interest holders. The clearest example of this is found in § 16–207 (Unpaid account settled by public sale; applicability of notice requirements), where owners and the holders of perfected security interests are given different levels of priority with respect to the proceeds of a statutory sale. Other examples include § 16–203 (Retention of possession by lienor; notice of lien), which makes several references to the notice to

---

§ 16–208 replevin, it also might be considered to "step into the shoes" of the "owner" and be liable for the charges that gave rise to the lien.

**24.** Friendly may be able to request a writ of replevin based on another statute, rule, or the common law, but only replevin under § 16–208 discharges a garageman's lien. *See* § 16–203(a). Replevin predicated on any authority other than § 16–208 could clarify the status of Friendly with respect to the vehicle's owner, but is not a basis for gaining priority of possession over Orbit.

**25.** We previously have declined to import the definition of the word "owner" from one article of the Maryland Code to another. When construing § 16–203 in *Central GMC, Inc. v. Helms*, 303 Md. 266, 272, 492 A.2d 1313, 1316 (1985), we found that the definition of "owner" in Maryland Code (1977), § 11–143 of the Transportation Article was not applicable because " § 11–101 [of the] Transportation Article, relative to definitions, states, 'In the Maryland Vehicle Law, the following words have the meanings indicated, unless the context requires otherwise.' This controversy does not involve 'Maryland Vehicle Law' which embraces Titles 11–27, Transportation Article."

which holders of perfected security interests are entitled without mentioning owners, and §§ 16–204 (Effect of surrender of possession), 16–206 (Proceedings if charge disputed), and 16–208 (Replevy of property by owner), which make reference to the owner of the vehicle or property without referring to any perfected security interest holder.

Another indication of the Legislature's intended meaning of the word is found in § 16–202: "Any person who, with the consent of the owner, has custody of a motor vehicle and who, at the request of the owner, provides a service to or materials for the motor vehicle, has a lien on the motor vehicle." § 16–202(c). It follows that any person authorized to consent to give a garage custody of a vehicle or to request that the garage perform services on it is an owner of that vehicle. Following that statutory test, Friendly had no authority to give Orbit custody of the vehicle or to request that Orbit repair the vehicle, without regaining possession from Atkins.

> [T]he buyer [of a vehicle] is the substantial owner. It is he who has the control, possession, care, and maintenance of a machine, which was second-hand when bought, and which must frequently require repair that it may continue in operation and be kept in proper condition, and this possession, use, and custody is exclusive of every one else but the seller or its assignee, and of it only if and when he make a default in his obligation to pay or to perform some of the terms of the contract looking to the preservation of the security afforded by the reservation of title in the article sold.

*Universal Credit Co. v. Marks*, 164 Md. 130, 135–36, 163 A. 810, 812 (1933) (construing a conditional sales contract, a precursor to modern security interests, where the secured party, not the purchaser, retained title to the vehicle).

Nor was Friendly a "person lawfully in possession" under § 16–101. Atkins had sole possession of the vehicle at the time it was delivered to Orbit for repairs, and had not yet defaulted on Friendly's purchase loan at that time. Friendly had a security interest that could mature into a right to

possession of the vehicle, but did not then possess the vehicle. In *Central GMC, Inc. v. Helms,* 303 Md. 266, 492 A.2d 1313 (1985), we concluded that a purchaser of a vehicle who had not yet taken possession was not its owner for the purposes of § 16–203. Rather, the party that sold the vehicle to the purchaser and still had possession pending delivery of the vehicle was its owner. *See also Wolf Org. v. Oles,* 119 Md.App. 357, 705 A.2d 40 (1998) (purchasers who had not yet taken possession of a house were not "owners" of the house for the purposes of the Maryland Mechanics' Lien Statute, Md.Code (1974, 1996 Repl.Vol.), §§ 9–101 through 9–114 of the Real Property Article). Friendly may have a superior right to possess the vehicle to that of Atkins, but had not taken possession and therefore was not the vehicle's owner for the purposes of Title 16.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY PETITIONER.