CORINNE E. JOSLIN *et al. vs.* ALICE T. W. JOSLIN, *et al.*

MAY 19, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This is a bill in equity for partition of certain realty of which William H. Joslin died seized and possessed, and also for an assignment of the widow's dower therein.  The complainants are Corinne E. Joslin, widow of the deceased, and their six minor children. ` The respondents are all the other heirs of the deceased by a former marriage, and are five in number.  Guardians *ad litem* for the minor complainants and minor respondents were appointed; all of the owners of estates in the realty were made parties to the bill; and all the respondents filed answers thereto.

The cause was heard in the superior court on bill and answers, and a decree was thereupon entered, providing in substance that the complainants and respondents, as owners of the entire realty, were entitled to partition; that the complainant Corinne E. Joslin was entitled to dower in the whole of the real estate; and that said real estate be partitioned and the widow's dower therein be assigned. That decree further appointed commissioners to make partition of the realty, and also authorized them to take an account of the rents and profits thereof since the owner's death, and to make a report of all to the superior court, including their recommendations of the best means to accomplish partition.

The commissioners duly filed a report setting forth substantially their conclusion that partition of the whole estate among the heirs by metes and bounds was impracticable; and they recommended that the country estate as a whole, or according to parcels as shown upon a map which accompanied the report, be sold at private sale, if possible, and at public auction, if necessary. The report showed the tentative appraised valuations of the various parcels into which the estate was divided for purposes of a more ready sale. A decree was entered, after a hearing on the commissioners' report, and it followed these recommendations in part and authorized the award of preferences to the widow if she elected to purchase certain parcels either at private or public sale. All the complainants and all except one of the respondents have duly appealed from this decree and the cause is before us on these appeals.

It appears from the report and evidence that all the realty of William H. Joslin, deceased, was divided·generally into two parts: (1) improved income-producing real property located in Providence and (2) an extensive country estate or estates located in the towns of Scituate and Foster. It was agreed by all parties that the matter before the superior court upon the commissioners' report was confined to the

rights of the heirs and widow in the Scituate and Foster real estate. This country estate was subdivided by the commissioners into three main parcels as follows: (A) the homestead residence, garage, well house and 131.45 acres of land; (B) the superintendent's house, barns, "The Bennett House" and 170 acres of land; (C) the twelve separate parcels or farms, eleven of which are located in Scituate, near parcels A or B. The twelfth parcel thereof, "The Bolster Place", is situated in Foster.

The commissioners tentatively appraised the value of these various parcels as follows: Parcel A, the homestead, $28,750; parcel B, the farm, $18,750; parcel C, consisting of twelve subdivisions ranging from $1500 to $3800, an aggregate valuation of $27,900. The total appraised valuation of the whole country estate, therefore, was fixed by the commissioners as $75,400.

The report further showed that partition of the entire estate by metes and bounds was impracticable, because approximately two-thirds of its total value was "situated" in parcels A and B, the homestead and farm, the buildings thereon representing the greater value of all the estate. The country estate, as above divided and shown on the commissioners' map, was apparently appraised and divided by them for the purpose of proposed sales. The report refused the widow's request to set off to her *in fee* a certain portion of the homestead and farm in lieu of dower, on the ground that such assignment in fee was not apparently authorized by law.

The decree appealed from contains many details that are usual or incidental and are not seriously contested. The main dispute* appears to be based mostly upon the first, second and sixth provisions of that decree which read as follows:

"1. A division of said estates by metes and bounds is impracticable and inequitable. 2. Subject to the provisions of Paragraph 6 herein, said Commissioners are authorized

to offer for private sale, contract to privately sell, and to privately sell the 'Homestead Farm', so-called, for not less than the sum of $47,500 in cash, and the other estates in Scituate and Foster separately for not less than the amount of the valuations placed upon them in said Report, or all of said estates as a unit for not less than the sum of $75,400 in cash, all of the estates being described in the Bill of Complaint and delineated on Commissioners' Plats number 1 and 2 accompanying their report. . . . 6. In case Corinne E. Joslin (complainant) purchases the 'Homestead Farm' at private sale or public auction, she shall have the right to purchase, and the Commissioners are authorized and directed to sell and convey to her, any or all the parcels abutting on the Field Hill Road, as shown on said Commissioners' Plat No. 1, upon receipt in cash of the amounts of the value thereof, respectively, as stated in said Report, provided she shall, within five days after she becomes the owner of the 'Homestead Farm', agree with the Commissioners, in writing, to purchase the same on those terms."

The complainants' appeal urges particularly that the commissioners' report and evidence show that it is not impracticable to partition *parcel C* by metes and bounds, if the doctrine of owelty is applied to adjust the differences between the respective valuations placed upon eleven of the subdivisions thereof; and, therefore, that the decree should limit the sale to parcels A and B together, or to one of them. It is also urged that the widow is entitled to the preferences awarded to her, especially by the second and sixth paragraphs of the decree. The alleged right of the widow to have a definite part of the estate set off to her *in fee* as, or in lieu of, her dower is apparently not pressed before us and is, therefore, considered to be waived.

The respondents, on the other hand, contend that the widow is not a proper party to the partition because she is not seized or possessed of any estate in the realty before her dower is assigned; and that she is entitled in law neither to

an assignment in fee of any portion of the realty, nor to any preference in the sale or sales, if held.

After examination of the report and transcript of evidence, decree, and briefs of the parties, we are of the opinion that the decree is erroneous in part. All of the parties agree that a sale of the whole country estate for the appraised aggregate valuation of $75,400 would be most practicable and desirable to all of the interested parties. The commissioners so recommended and a provision in the decree to that effect is approved.

The complainants contend that the law favors partition among heirs by metes and bounds if practicable; and that the commissioners' report and evidence show that it was not impracticable to partition parcel C among the eleven heirs, selling only the "Bolster Place" in Foster to assist in payment of taxes. However, the complainants recognize by their argument that such partition of parcel C is impracticable, unless the doctrine of owelty is applied, because the various subdivisions of parcel C are by no means equal in character and valuation. Therefore, unless the evidence and circumstances justify the application of owelty of partition, the complainants' strongest contention must fail.

It is true, as contended, that the law favors partition of realty among the heirs by metes and bounds. *Lannon v. Lannon,* 40 R. I. 60. The doctrine of owelty in partition also has been recognized in this state. *Updike v. Adams,* 24 R. I. 220, 221; *Robinson v. Robinson,* 24 R. I. 222. However, in *Updike v. Adams, supra,* the court carefully pointed out: "The rule, however, which permits owelty to be required must have some limitation. The court must see that the requirement of owelty is equitably necessary; that the amount required is fair, and that its payment is not so imposed upon a party as to be unreasonably burdensome, considering both the condition of the property and the party." This is also in accord with the general rule elsewhere.

The immediate question, therefore, is whether the report and evidence show that owelty would be equitably necessary and fair and not unreasonably burdensome. Ordinarily the findings in a commissioner's report approved by the court will not be set aside, unless it is shown that the court has erred. The duty rested upon the complainants in the first instance to show that the commissioners' report and recommendations were erroneous. There is language in the report and evidence which, considered separately, might raise an implication that a partition of parcel C might not be entirely impracticable, if parcels A and B, or either of them, were sold. But we think that the report and evidence as a whole show that the commissioners really believed otherwise and that they made their subdivisions of parcel C on the basis of their recommended sale of the estate as a whole or in parts, as the most practicable and desirable solution.

The complainants rely strongly upon *Updike* v. *Adams, supra,* to support their argument that there must be evidence to show that partition of parcel C would be inequitable or that the payments required for owelty would be unreasonably burdensome. They contend that there was no such evidence here; but they apparently overlook certain portions of the commissioners' report and evidence. Considered together, this evidence shows without contradiction that the appraisal values of these eleven parts of parcel C range from $1500 to $3800; that their areas range from about six acres to about one hundred sixty-five; that the buildings on some parts are in a bad or ruinous condition while those on others are in fairly good condition; that some provide rental income while others do not; that some have no buildings while others have good buildings; and that generally these parts of parcel C, as shown on the map, do not submit to an equitable division by metes and bounds among eleven heirs. There is no direct testimony that a partition by metes and bounds was practicable even for

parcel C, or that the heirs would suffer by a sale of all the estate.

While the law favors partition by metes and bounds rather than by sale, the burdens to be imposed by owelty must not be unfair or unreasonable, considering both the condition of the property and the party. *Updike* v. *Adams, supra.*

In the instant case the undisputed evidence shows that the average value of the share of each heir in eleven of the twelve parts of parcel C would be about $2354. Application of owelty in partition would require that the heir to whom C-#10, the greater Burgess farm, would be assigned must pay $1445 in cash to adjust the difference in valuations. Thus, that heir, though he might desire only his share of the inheritance in kind, must take more and must also discharge the imposed burden of paying in cash an amount equal to more than 60% of the average value of the shares in parcel C.

On the other hand, some other heir, whether or not he desired his full share in kind, would be bound to accept C-#7, valued at $1500; thus compelling him to receive less than 64% of his inheritance in kind and more than 36% thereof in cash. Moreover, this latter being the "Gilbert Adams Place", he must accept as a natural farming inheritance an estate of only six and a fraction acres with good buildings, while another heir must receive one hundred fifty or one hundred sixty-four acres, more or less, with worthless buildings or perhaps no buildings at all. The complainants have cited no case where the court granted owelty of partition where such extensive inequalities in character and valuation existed and where such burdens must have been imposed to adjust these inequalities, as are required here.

Moreover, if these inequalities might not of themselves render payments in owelty unfair or unreasonably burdensome, we are of the opinion that they would become so here

because of another important element. It will be noted that the language in *Updike* v. *Adams, supra,* required that the payment in owelty "is not so imposed upon a party as to be unreasonably burdensome, considering *both the condition of the property and the party.*" (italics ours)

In the instant case, *all* of the complainant children and several of the respondents are minors. The uncontradicted evidence shows that these parts of parcel C produce little or no net income. The small amount of rent from some is probably not sufficient to offset the cost of taxes, and upkeep. A burden in owelty which may not be unreasonable for some parties might well be unreasonable and not for the best interests of minors.

As we view it, the investment of the proceeds of a sale to establish an income-producing estate would be far more beneficial to the minors now than an inheritance in kind, which they cannot, because of age, use for their own support, and which may well require the expenditure of money and a net loss for an indefinite period. Considering both the condition of the property and the best interests and condition of the minor parties and the report and evidence as a whole, we cannot say that the decree was wrong in authorizing a sale of parcel C under certain conditions rather than authorizing partition with owelty.

The respondents' contention that the widow, before the assignment of her dower, is not seized or possessed of any estate so as to make her a necessary party to partition, or to give her any particular rights of preference therein, must be sustained. Before assignment of dower the widow has merely a right or chose in action and not an estate. *Astle* v. *Card,* 52 R. I. 357. See also *Hoxsie* v. *Ellis,* 4 R. I. 123; *Newell* v. *Willmarth,* 30 R. I. 529. Therefore the court was not justified in law in providing certain preferences to the widow, particularly in paragraphs second and sixth of the decree, which materially affected performance of some of the other provisions for sale.

However, there may be some practical considerations here which may fairly be satisfied under another form of decree in the interest of all parties. If, as an inducement for a better sale, whoever purchases the homestead and farm is given the right to also purchase other parcels contiguous to the private Field Hill Road, for not less than the appraisal prices, the widow could obtain the benefits which she might desire, if she elected to purchase parcels A and B at private sale. On the other hand, if the estate be sold at public auction, it could be offered in such a way that any purchaser of A and B would have an opportunity to also buy in at their appraised valuations these other parcels that are contiguous to Field Hill road.

Under all of the circumstances we are of the opinion that the commissioners should be authorized to negotiate for a sale of the whole property at private sale or sales for a reasonably limited time and that they should have an allowance for suitable advertising for that purpose; that in the event they are unable to sell the whole estate to one or several buyers at the same time, as recommended, before the time to be set in the decree, the country estate should be sold at public auction. The usual and incidental portions of the decree appealed from, which are not disputed, should also be included, and all contracts for private sale or sales or at public auction should be subject to the approval of the court.

The appeal of the complainants is denied and the appeal of certain respondents is sustained in part. The parties may, on May 26, 1939, present to this court for approval a form of decree in accordance with this opinion, to be entered in the superior court.

*Alfred G. Chaffee, Arthur H. Feiner,* for complainants.

*Henry M. Boss,* for respondents.

*Eugene J. Phillips,* Guardian *ad Litem* of Gilbreth Brown, Jr.