[Civ. No. 13089. First Dist., Div. One. Aug. 1, 1946.]

Estate of MARIA SATARIANO GALLETTO, Deceased. JOSEPH SATARIANO et al., Appellants, v. JOSEPH GALLETTO, as Administrator, etc., Respondent.

Simeon E. Sheffey for Appellants.

Charles R. Collins and Tobin & Tobin for Respondent.

PETERS, P. J.—The appellants are the three sons of Maria Satariano Galletto. Their father predeceased their mother. The respondent is the second husband and surviving spouse of Maria, and is the administrator of her estate. As such administrator he commenced regular administration of his wife's estate filing an inventory in which the total estate was appraised at $3,825.75. Included within this inventory was the entire interest in a certain parcel of real property valued at $3,500. The respondent, however, while listing this property as belonging to the estate in its entirety, contended that a one-half interest was held by him and his deceased wife as joint tenants, and that as surviving joint tenant this interest belonged to him. After the death of his wife, he commenced a proceeding to terminate this joint tenancy interest. This proceeding was contested by appellants and resulted in an order in his favor terminating the joint tenancy. Thereafter, the respondent filed an amended inventory in his wife's estate showing that with this interest deducted the total estate was valued at $2,075.75, and he thereupon petitioned that the entire estate, being less than $2,500, be set aside to him as surviving spouse. The trial court set aside the estate to respondent. Appellants appeal from the order terminating the joint tenancy and from the order assigning the estate to respondent. Their main contention is that the joint tenancy deed was void in that the wife admittedly owned an undivided one-half interest in the property as her separate property, and it is urged that it is legally impossible for one joint tenant to own an undivided interest in real property as her separate property and the balance with another as a joint tenant. It is also contended that even if the joint tenancy deed is valid, and the estate is less than $2,500 in value, respondent's application to have it set aside to him came too late in the proceedings, either because he is estopped, or because he has elected his remedy. All of these contentions lack merit.

Before directly discussing these contentions there is a preliminary matter relating to the record to which reference should be made. The record shows that when petitioner filed his amended inventory and petitioned to have the estate assigned to him as surviving spouse the statutory notice was given, but no objection to the petition was made by appellants. Thereafter, the appellants filed the notice of appeal from the orders of the trial court heretofore mentioned. The appellants

ordered a clerk's transcript prepared containing copies of various documents. Upon respondent's request the trial court ordered stricken from the proposed clerk's transcript the following documents: (1) The petition for letters of administration; (2) the order appointing administrator; (3) the inventory and appraisement; (4) the final account and petition for settlement and for final distribution; (5) the exceptions to the final account and petition for settlement and for final distribution; (6) the minute order overruling the exceptions and granting the petition for distribution.

Thereafter the appellants petitioned this court pursuant to rule 12 of the Rules on Appeal to augment the record by the inclusion in the clerk's transcript of these documents. This court granted the request subject, however, to the provision that the court was not then "passing on the relevancy of the documents and saving to respondent all objections to the court considering such documents on the appeal." The respondent contends, with considerable logic, that this appeal is governed by section 1242 of the Probate Code, and that under that section the proffered documents are no proper part of the clerk's transcript. That section provides in part:

"The following papers, without being attached together, shall constitute the judgment roll in the proceedings mentioned in this code:

"1. The petition or application or contest or report or account which initiates a particular proceeding; any order directing notice to be given of the hearing thereof; any notice of the hearing thereof, or any order to show cause made thereon, with the affidavits showing such publication, posting or mailing of the notice or order as may be required by law or the order of the court; the citation, in case no answer or written opposition is filed by a party entitled, by law or order of court, to notice of the proceeding by citation, with the affidavit or proof of service thereof, and if service of such citation is made by publication, the affidavit for such publication and the order directing publication; any finding of the court or referee therein; the order or judgment made or rendered therein; and the letters testamentary or of administration, if any." It would appear that, under this section, it is very doubtful indeed whether the proffered documents have any rightful place in the clerk's transcript. However, in view of the conclusions we have reached on these appeals, it is immaterial whether

such documents be considered or not, and in the balance of this opinion we will assume that such documents are properly before us.

If the entire proffered record be considered, the following dates are pertinent:

*June 26, 1941*—respondent petitioned for letters of administration in his wife's estate listing himself and the three appellants as the decedent's heirs at law.

*June 9, 1941*—respondent appointed administrator.

*June 19, 1942*—respondent filed a petition to terminate a joint tenancy in an undivided one-half of the real property in question, claiming therein such interest as survivor.

*June 24, 1942*—respondent filed an inventory appraising the estate at $3,825.75. Included in the inventory was the entire interest in the real property here in question, valued at $3,500.

*June 25, 1942*—respondent filed a final account and petition for final distribution.

*July 6, 1942*—appellants filed exceptions to the petition to terminate the joint tenancy.

*July 7, 1942*—appellants filed exceptions to the final account and petition for final distribution.

*August 3, 1942*—decree entered terminating the joint tenancy and determining respondent was the surviving joint tenant of this interest. This decree was filed May 14, 1945.

*April 30, 1945*—the respondent, as administrator, filed an amended inventory valuing the estate at $2,075.75, and in which but an undivided one-half of the property was included as an asset. On the same day respondent filed a petition that the entire estate be set aside to him as surviving spouse. The required statutory notices were posted.

*May 14, 1945*—order made assigning the estate to respondent.

In attacking the orders appealed from it is the theory of the appellants that the estate was of the value of more than $2,500 because, so they claim, the entire interest in the real property involved belongs to their mother's estate. Before discussing this issue directly some reference should be made to prior litigation involving this property. In the prior litigation appellants took the position the property belonged to the estate of their father who predeceased their mother. (See *Satariano* v. *Galletto*, 66 Cal.App.2d 813 [153 P.2d 201].) That case discloses that although when the father of appel-

lants died in 1921 the real property in question may have been part of his estate, his wife subsequently acquired at least a title by adverse possession. Thus it has been judicially determined that the property belonged to Maria Galletto. The opinion in that case also shows that respondent married Maria in 1927 and lived with her on the property until her death in 1940. At the time of the marriage the property was encumbered to the extent of $1,600 and the respondent paid off, with his separate property, $900 of this debt. In 1930 Maria conveyed to respondent a one-quarter interest in the property. In 1931 Maria and respondent conveyed their respective interests to a title company, and that company thereupon, by separate conveyances, conveyed an undivided one-half interest to Maria, and, as part of the same transaction, the other undivided one-half interest was conveyed to Maria and respondent as joint tenants. ▮▮ It is the theory of appellants on the present appeals that this last deed from the title company to their mother and respondent as joint tenants was void for the asserted reason that it is legally impossible for one joint tenant to own an interest greater than the other. It is urged that, under the circumstances here existing, one of the essential unities required for a joint tenancy is lacking, namely, unity of interest. If this argument is sound, the order setting aside the estate to respondent should be reversed because at least one-half of the interest now claimed by respondent ($\frac{1}{4}$ interest in the total property) would be the property of the wife's estate and this would cause that estate to exceed $2,500 in value.

The argument of appellants is unsound. Appellants place their main reliance in support of a reversal on certain language appearing in the case of *Siberell* v. *Siberell*, 214 Cal. 767 [7 P.2d 1003]. That case has no application at all to the problem here involved. There the husband and wife, with community funds, purchased certain real property and took title as joint tenants. Upon dissolution of the marriage the wife contended that this joint tenancy deed, when read in connection with the presumptions created by section 164 of the Civil Code, created a peculiar joint estate in which she took a one-half interest as her separate property and that the other one-half became the community property of herself and husband. Upon dissolution of the marriage the wife claimed, therefore, that she was entitled to a three-

fourths interest. In refuting this contention and in holding the deed created either a conventional joint estate, or that the entire property remained community property, the court stated (p. 771):

"Respecting joint tenancy, it is only necessary to amplify the definition quoted from section 683 by a quotation from the case of *DeWitt* v. *San Francisco,* 2 Cal. 289, 297, opinion rendered in 1852, defining joint tenancy as follows: 'Joint tenancy is a technical feudal estate, founded, like the laws of primogeniture, on the principle of the aggregation of landed estates in the hands of a few, and opposed to their division among many persons. For the creation of a joint tenancy, four unities are required, namely, unity of *interest,* unity of *title,* unity of *time,* unity of *possession.* 1 Cruise's Digest, (by Greenleaf,) 355, sec. 11. 2 Crabb's Real Prop. sec. 2303. But the distinguishing incident is a right of survivorship. 1 Cruise, 359, sec. 27. 2 Crabb's Real Prop. sect. 2306.' These four characteristics are the acknowledged elements of a joint tenancy. (1 Tiffany on Real Property, 2d ed., p. 625, par. 191; 2 Blackstone's Commentaries 180.) It is at once evident that there is thereby created but one estate and that each of the four elements, unity of interest, unity of title, unity of time and unity of possession, must be present and an absence of any one would change the nature of the estate.

"Applying the first of these elements, unity of interest, to the situation of a wife holding half the property as her separate estate and the husband holding the other half as community property, it will be at once noted that there can be no unity of interest present, for the interest of the wife would be unequal to and more than that of the husband."

The reasoning of that case has no application here. In the instant case, by separate deeds, separate interests in the property were created. By one deed an undivided one-half interest was conveyed to the wife. That severed that portion of the title from the total title. Then the balance of the title was conveyed to the husband and wife as joint tenants. As to *that* interest, all the requisite unities exist. It is, of course, the law that one joint tenant cannot, as to the joint tenancy interest involved, own a greater share than any of the other joint tenants. That is the rule announced in the Siberell case, *supra.* The theory is, that joint tenants together have but one estate and hence their interest must be equal. That is the basis of the requirement that there must

be unity of interest. (See 2 Tiffany on Real Property (3d ed.) § 418, p. 196 at p. 198; 2 Jones' Blackstone, § 254, p. 955; 2 Reeves, Real Property, § 677, p. 959.) But this rule does not prohibit one joint tenant from also owning a different and distinct interest in the property. Once it is conceded that a joint tenancy may exist as to an undivided interest in property, and that rule is perfectly clear, the balance of the undivided interest may lawfully be held by one of the joint tenants as well as by a stranger. The equality of interest requirement simply means that the interests of the joint tenants in the subject or interest involved in the joint tenancy must be equal. The subject of the tenancy involved herein is an undivided one-half interest in the property. In that interest the respondent and wife owned equal and identical interests. They held one and the same interest in the subject of the joint tenancy. As already pointed out, it is entirely immaterial that the wife also owned as her separate property the other undivided one-half interest. There appears to be little case authority directly in point, but the several legal writers in this field that have discussed the problem seem agreed that one joint tenant, independent of his interest in the joint tenancy, may own other interests in the same property. On principle this conclusion seems irrefutable. The usual situation discussed is where there are more than two joint tenants, and one conveys his interest to one of the others. For example, if A, B and C own Blackacre in joint tenancy and A conveys his interest to B, such conveyance would destroy that interest in joint tenancy, and B would become, as to that interest, a tenant in common with C. But B and C would still remain joint tenants as to the interest originally acquired. This is clearly pointed out in 2 Tiffany on Real Property (3d ed.), page 208 at page 211, section 425, where it is stated: "A joint tenancy may be terminated in part or wholly, not only by a conveyance to a stranger, but also by a conveyance to, that is, a release in favor of, another joint tenant. In such a case, if the effect of the conveyance or release is to vest the whole property in the land in one person, the joint tenancy is terminated because there is no longer a holding by more than one person, while if one of three or more joint tenants conveys or releases his interest in favor of one of the others, there is a severance as regards that interest, and the latter cotenant becomes, with regard thereto, a tenant in common

with the third cotenant, while he is still a joint tenant with regard to that which he already held." (Cited in support of the text are "Litt. § 304; 2 Blackst. Comm. 186; 2 Preston, Abstracts, 61''; for an interesting discussion, see, also, note in 10 Minn.L.Rev. 325, discussing the case of *Kemp* v. *Sutton*, 233 Mich. 249 [206 N.W. 366].) These principles are equally applicable to the situation involved in the instant case.

Respondent also urges that the issue involved was decided in the case of *Satariano* v. *Galletto*, 66 Cal.App.2d 813 [153 P.2d 201]. That case, as already pointed out, was the one in which appellants were contending the property belonged to their father's estate. The court held that even if the father's estate had good record title, the wife had secured title by adverse possession. In addition to this point the court, near the conclusion of its opinion, did discuss the legal effect of the joint tenancy deed. In this discussion the word "defendant" refers to the respondent in the instant case, and the conveyances referred to are the very conveyances here involved. At page 817 it is stated: "In view of our conclusion that Maria could and did acquire title by adverse possession, which conclusion requires a reversal of the judgment, we need not discuss the effect of the joint possession of the premises by Maria and defendant over the years following 1930, during which time defendant had at least color of title to an undivided interest by virtue of the conveyances previously mentioned. The due execution of those conveyances is conceded and we are in accord with defendant's claim that, upon the death of Maria, defendant became vested with an undivided one-half interest in the premises as the surviving joint tenant of said one-half interest and that the estate of Maria became vested with the remaining undivided one-half interest which is subject to probate. It therefore appears appropriate to reverse the judgment and to direct a judgment in favor of defendant."

We do not find it necessary to determine whether that holding is *res judicata* in the present proceeding (it being contended that it is not because, so it is urged, appellants in the present case were not parties to that issue in that case), because on the merits we agree that that was the proper holding.

Appellants also urge that even if the estate was not of a value of $2,500, respondent's application to have it set aside to him came too late in the proceeding to be effective. As the table of dates heretofore set forth indicates, general admin-

istration of the estate had reached the point of the filing of a final account and petition for final distribution, and of holding a hearing thereon, before respondent petitioned to have the estate summarily set aside to him.

Section 642 of the Probate Code provides in part: "If the decedent leaves a surviving spouse . . . and upon the filing of the inventory of the estate it appears that the net value of the whole estate over and above all liens and encumbrances of record at the date of death does not exceed the sum of two thousand five hundred dollars, the personal representative of the decedent . . . may file a verified petition showing the value of the estate to be no greater than as aforesaid, and the clerk shall fix a day for the hearing thereof."

■ The appellants urge that since the first inventory, filed in June, 1942, showed a value of $3,825.75, and that subsequently the other acts heretofore mentioned were performed, and since the amended inventory and petition to set aside the estate were not filed until April 30, 1945, the above section was not complied with.

To so interpret the section would frequently result in grave miscarriages of justice. Many times, and the instant case illustrates just such a situation, the value of the estate cannot be ascertained when the first inventory is filed. In the instant case the appellants were claiming the property here involved as part of the estate of their deceased father. Moreover, appellants claim that even if the property belonged to their mother the joint tenancy deed was void. Litigation was pending over these issues. Respondent listed the property as belonging to the estate and it was not until the decision in the *Satariano* v. *Galletto* case, *supra,* that he realized he had included a part of his separate estate as part of his wife's estate. He immediately filed an amended inventory when he had determined that the estate was below $2,500 in value. That he had the legal right to file an amended inventory cannot be doubted. (See cases collected 11A Cal.Jur. § 353, p. 484.) The word "inventory" in section 642, *supra,* must be interpreted to include an amended inventory. It follows, of course, that, upon filing the amended inventory, the respondent under the section, had the right to petition for summary administration.

■ It cannot be successfully contended that by listing the whole of the property in the original inventory respondent was in any way estopped from later claiming the whole

or part of the property as his separate property. The correct rule, amply supported by citation of authority, is stated as follows in 11A California Jurisprudence section 355, page 487: "The inclusion of his property in an inventory does not estop the representative from claiming such property as his own, and his admissions made by including his property in the inventory are made for the benefit of the estate and do not conclude his individual right by way of estoppel. . . ."

Appellants argue, however, that by instituting ordinary administration proceedings they were put on notice of the pendency of the proceedings and lulled into a sense of security that such proceedings would be continued, and they contend that if respondent is later allowed to obtain summary administration by merely posting the statutory notice, as was here done, he obtains an unfair advantage in that they, practically speaking, are deprived of an opportunity to be heard on the latter petition where they do not receive actual notice. There is no merit in this contention. In the first place, appellants could have protected themselves and received actual notice by complying with section 1200 of the Probate Code. Furthermore, before appellants can successfully claim that respondent was estopped to change the form of proceedings they must show some prejudice. The mere fact that they did not appear to oppose the petition for summary administration does not constitute prejudice, unless they can show that, had they appeared, they could have successfully opposed the petition. This they cannot do because, if the joint tenancy deed is valid, as we have held, the estate is admittedly less than $2,500. In such estate, where the petition for summary administration was filed, they had no legal right to share.

These same arguments dispose of the contention that there was an irrevocable election of remedies.

The orders appealed from are affirmed.

Ward, J., and Schottky, J. pro tem., concurred.