DECISION
Before this Court are the cross-motions for summary judgment[1]
of Plaintiff Susan Carpenter ("Plaintiff") and Defendants David W. Carpenter, Mary A. Carpenter individually, Mary A. Carpenter and Richard J. DeSista as Trustees of the Mary Carpenter Realty Trust, and Linda Carpenter as Executrix of the Estate of Benjamin S. Carpenter, III (collectively "Defendants"). In this action for partition, Plaintiff and Defendants dispute Plaintiff's ownership interest in the property at issue, the value of the property, and how the property should be partitioned. For the reasons set forth below, this Court now grants partial summary judgment on Defendants' motion as to the extent of Plaintiff's ownership interest, and denies Plaintiff's motion as to the same. Plaintiff's motion for partial summary judgment as to the impracticability of partition by kind is granted. This Court shall appoint a commissioner to further consider the valuation and income of the property in order to facilitate partition by private sale of Plaintiff's ownership interest to the Defendants. Jurisdiction is pursuant to G.L. 1956 § 8-2-13. *Page 2 
 I Facts
This case arises from Plaintiff's Complaint for Partition of Real Estate; namely, the parcel of real estate located at 522 Matunuck Beach Road, Wakefield, Rhode Island, and identified as South Kingstown Tax Assessor's Plat 86-3, Lot 151. (hereinafter referred to as "Carpenter Farm").[2] Plaintiff seeks a court-ordered sale in lieu of physical division of said parcel. Defendants — the remaining holders of ownership interests in Carpenter Farm — admit Plaintiff possesses an undivided interest in the parcel. At issue, however, is the extent of this ownership interest.
The factual circumstances of the chain of title in this case are undisputed. (Defs. Br. pp. 1, 4.) Instead, the differing calculations of Plaintiff's ownership interest in Carpenter Farm stem from conflicting applications of cotenancy law by Plaintiff and Defendants to three prior conveyances of Carpenter Farm interests. In order to understand the significance of these three conveyances, a summary of the chain of title is essential.
Arthur B. Carpenter ("Arthur") was the last Carpenter family member to singly own Carpenter Farm in its entirety. Arthur died testate on August 2, 1949, and his Will was subsequently probated. (Defs. Ex. 1 p. 2.) The Will devised a life estate in Carpenter Farm to Wanton R. Carpenter ("Wanton"), and upon his death, to Arthur's children in equal shares; "the issue of any of them who have deceased to take the share which their parent or ancestor would have taken if living" (Pl. Aff. Ex. D). At the time of Wanton's death in 1989, three of Arthur's children — Mary A. Carpenter ("Mary"), Gilbert C. Carpenter ("Gilbert"), and Harold H. Carpenter ("Harold") — survived. Another son, Benjamin S. Carpenter, predeceased Wanton in *Page 3 
1984, leaving three children as issue with the right to an interest in Carpenter Farm pursuant to Arthur's Will. (Defs. Ex. 1 p. 3.) These three children — Elizabeth C. Kenyon ("Elizabeth"), Patricia C. Maloof ("Patricia'), and Benjamin S. Carpenter, Jr.[3] ("Benjamin Jr.") — each received one-third of Benjamin S. Carpenter's interest. Thus, at the time of Wanton's death, title to Carpenter Farm vested as follows: Gilbert (25%); Mary (25%); Harold (25%); Benjamin Jr. (8 1/3 %); Patricia (8 1/3 %); and Elizabeth (8 1/3 %).
During the 1990s, several conveyances transpired effectively consolidating the interests in Carpenter Farm among a small number of family members. These transferences are summarized below:
 • Harold died in April 1994, devising his 25% interest in Carpenter Farm to Mary.
 • On May 25, 1994, Gilbert conveyed his 25% interest in Carpenter Farm by Quit-Claim Deed to Benjamin Jr. and David W. Carpenter ("David") as Joint Tenants (hereinafter referred to as "the Gilbert Deed").
 • Both Patricia and Elizabeth conveyed their individual interests to Mary by Warranty Deeds dated July 8 and July 9, 1997, respectively, and recorded July 10, 1998.
Thus, as of July 10, 1998, Mary held the majority of the ownership interest in Carpenter Farm. Plaintiff and Defendants agree that Mary's interest then constituted, and still constitutes, a 66 2/3% interest. Benjamin Jr. owned the 8 1/3% interest he inherited from his father, as well the 25% interest owned with David as joint tenants. Whether a joint tenancy was actually created between David and Benjamin Jr. through the Gilbert Deed is disputed in this case and more fully addressed below. *Page 4 
Following this consolidation of interests, a subdivision plan was recorded in the South Kingstown Land Evidence Records, resulting in the creation of two lots. (See Pl. Aff. Ex. F.) Lot 1 contains approximately 38.43 acres, and is the subject of the instant partition action. Lot 2 contains approximately 3.85 acres and was subsequently conveyed by Quit-Claim Deed from Benjamin Jr. and Mary to David alone on August 17, 1998 (hereinafter referred to as "the Subdivision Deed.") (Defs. Ex. 1 p. 4.) The conveyance of Lot 2 is also at issue and discussed below.
Carpenter Farm operated as a working farm and farm stand for many years. (Pl. Aff. ¶ 5.) In order to preserve the agricultural character of Carpenter Farm, the three owners — Mary, Benjamin Jr., and David — agreed to sell the development rights to Carpenter Farm. This was achieved by Deed to Development Rights dated September 3, 1998, which conveyed the development rights to the State of Rhode Island, Agricultural Land Preservation Commission. (See Pl. Aff. Ex. B.) In addition, a Conservation Easement bearing the same date was recorded, granting a conservation easement over Carpenter Farm to the State of Rhode Island, Department of Environmental Management. (See Pl. Aff. Ex. C.)
On December 10, 2005, Benjamin Jr. died, and his Will was admitted to probate on February 27, 2006. (Defs. Ex. 1 p. 4.) His Will devised his residuary estate, which included his interest in Carpenter Farm, equally to Plaintiff and to his son, Benjamin S. Carpenter, III ("Benjamin III"). (See Pl. Aff. Ex. I.) To facilitate this devise, Benjamin III — in capacity as Executor of the Estate of Benjamin Jr. — filed two Executor's Deeds in the South Kingstown Land Evidence Records conveying half of an 8 1/3% interest to himself, and half to Plaintiff. (Defs. Ex. 1 p. 4; Pl. Aff. Ex. J.) Plaintiff alleges that Benjamin Jr.'s residuary estate included not only the 8 1/3% interest in Carpenter Farm inherited through the Will of Arthur, but also one *Page 5 
half of the 25% interest held with David and acquired through the Gilbert Deed. Defendants, however, aver that the residuary estate did not include the interest obtained through the Gilbert Deed because David received Benjamin Jr.'s interest as a joint tenant by operation of law. According to Plaintiff's calculation, Plaintiff holds an undivided 10.4166% ownership interest in Carpenter Farm. (Am. Compl. ¶ 2.) Conversely, Defendants evaluate Plaintiff's ownership interest at 4.16%. (Answer ¶ 2.)
Benjamin III died testate on July 15, 2008, and his Will was admitted to probate on January 26, 2009. (Am. Compl. ¶ 7; Defs. Ex. 1 p. 5.) His widow, Linda Carpenter, was appointed Executrix of Benjamin III's estate, and has been named as a Defendant in this case in that capacity. David W. Carpenter, Mary A. Carpenter, individually, and Mary A. Carpenter and Richard J. DeSista as Trustees of the "Mary Carpenter Realty Trust" are also named Defendants in this suit for partition.
Plaintiff filed her Motion for Partial Summary Judgment on April 9, 2009. Plaintiff argues that there are no genuine issues of material fact between the parties, and that Plaintiff is entitled to partial summary judgment on the following issues: (1) that Plaintiff has an undivided possessory interest in Carpenter Farm; (2) that Plaintiff's undivided possessory interest in Carpenter Farm equals 10.4166 percent; (3) that there exist other owners who also hold an undivided possessory interest in Carpenter Farm; and (4) that it is impracticable to partition Carpenter Farm by a physical division of the real estate, primarily due to the sale of development rights and the creation of the conservation easement over the parcel.
Defendants filed an objection and cross-motion for summary judgment on June 25, 2009. Defendants argue that there are no genuine issues of material fact between the parties, and that the Defendants are entitled to judgment as a matter of law on the following issues: (1) that *Page 6 
Plaintiff's undivided possessory interest in Carpenter Farm equals 4.16 percent; (2) that the interests in Carpenter Farm should be adjusted financially and not by order of public sale; (3) that the value of Carpenter Farm equals $395,680.00; and (4) that the Defendants be awarded costs and attorneys' fees.
 II Standard of Review
On a motion for summary judgment, the moving party has the initial burden of bringing forth evidentiary materials to prove that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Olshansky v.Rehrig Intern., 872 A.2d 282, 286 (R.I. 2005); Super. R. Civ. P. 56(c). To survive a motion for summary judgment, the non-moving party need only bring forth admissible evidence to demonstrate that there is a genuine issue of fact material to the legal issues of the case. Id. The hearing justice must view the evidence in the light most favorable to the non-moving party, and may neither weigh the evidence nor otherwise attempt to resolve factual disputes. See Palmisciano v. Burrillville RacingAss'n, 603 A.2d 317, 320 (R.I. 1992).
This standard reflects the policy that summary judgment is "a drastic remedy" that "should be dealt with cautiously." Estate ofGiuliano v. Giuliano, 949 A.2d 386, 390 (R.I. 2008). Overall, the court should only grant a motion for summary judgment where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. SeeOlshansky, 872 A.2d at 286. *Page 7 
 III Analysis
A. Plaintiff's Ownership Interest
At issue is the extent of Plaintiff's ownership interest in Carpenter Farm. In support of the calculation of Plaintiff's ownership interest as 10.4166%, Plaintiff argues that the 1994 Gilbert Deed — conveying Gilbert's 25% interest to David and Benjamin Jr. — created a tenancy in common, as opposed to a joint tenancy. Plaintiff contends that because Benjamin Jr. already owned an 8 1/3% interest in Carpenter Farm, the four unities of title, interest, time and possession necessary to create a joint tenancy failed to exist, and a tenancy in common was created in default. (Pl. Br. pp. 8-10.) Thus, under Plaintiff's theory, Benjamin Jr.'s interest in Carpenter Farm acquired through the Gilbert Deed (12.5%) passed to his residuary estate, and not to David by right of survivorship. This 12.5% interest, along with the previously inherited 8 1/3% interest, would have then passed to Plaintiff and Benjamin III in equal shares in accordance with Benjamin Jr.'s Will, giving the two devisees each a 10.4166% interest in Carpenter Farm.
In the alternative, Plaintiff argues that even if the Gilbert Deed created a valid joint tenancy, the 1998 conveyance of Lot 2 from Mary and Benjamin Jr. to David through the Subdivision Deed severed the unities of title, possession and interest, thus terminating said joint tenancy. (Pl. Br. pp. 10-13.) The inheritance of ownership interests would have then proceeded as described above, resulting in Plaintiff's 10.4166% interest in Carpenter Farm.
In Plaintiff's Reply Memorandum, Plaintiff introduces a third argument concerning severance of the joint tenancy between Benjamin Jr. and David created by the Gilbert Deed. Plaintiff argues that said joint tenancy, if not severed by the Subdivision Deed conveyance, was *Page 8 
subsequently severed by virtue of the transfer of Carpenter Farm's development rights in September of 1998.
Conversely, in support of the calculation of Plaintiff's ownership interest at 4.16%, Defendants argue that the Gilbert Deed created a valid joint tenancy between Benjamin Jr. and David, and that this joint tenancy was not severed by any subsequent conveyances of interests in Carpenter Farm. Thus, Defendants argue that Benjamin Jr.'s interest in Carpenter Farm acquired through the Gilbert Deed (12.5%) passed to David by right of survivorship. Under this theory, only the 8 1/3% interest previously inherited by Benjamin Jr. passed to Plaintiff and Benjamin III in accordance with Benjamin Jr.'s Will, giving the two devisees each a 4.16% interest in Carpenter Farm. After careful review of the law governing the creation and severance of joint tenancies, this Court now holds that Plaintiff possesses a 4.16% ownership interest in Carpenter Farm.
1. The Gilbert Deed Created a Valid Joint Tenancy
"The Rhode Island General Assembly has not defined joint tenancy in real property statutorily; the property interest exists, instead, under common law." Ruffel v. Ruffel,900 A.2d 1178, 1188 (R.I. 2006). Under common law, the creation and continuation of an estate in joint tenancy requires the four unities of interest, title, time and possession. Knibb v. SecurityIns. Co. of New Haven,121 R.I. 406, 410, 399 A.2d 1214, 1216 (1979). Thus, "joint tenants are required to have equal interests, acquired by the same conveyance, commenced at the same time and held by the same undivided possession." Id. A primary characteristic of joint tenancy is the right of survivorship. Id.
Plaintiff argues that the Gilbert Deed — conveying Gilbert's 25% interest in Carpenter Farm to Benjamin Jr. and David — purported to create a joint tenancy but failed to do so. (Pl. Br. p. 8.) *Page 9 
The Gilbert Deed expressly grants the interest to Benjamin Jr. and David "as Joint Tenants and not as Tenants in Common and not as Tenants By the Entirety." (Pl. Aff. Ex. E.) However, Plaintiff contends that because Benjamin Jr. already inherited and owned an undivided 8 1/3% interest in Carpenter Farm, all of the four unities of title, interest, time and possession failed to exist between Benjamin Jr. and David at the time of the Gilbert Deed in 1994. (Pl. Br. pp. 9-10.) Thus, Plaintiff avers that although the Gilbert Deed utilizes express words of joint tenancy creation, a tenancy in common was instead formed due to the inexistence of the requisite common law unities.
On the contrary, Defendants argue "multiple sets of joint owners of a single property have the right to acquire fractional interests separately as joint owners within their set, but not necessarily as overall joint owners of the entire property as a whole." (Defs. Br. p. 7.) Thus, Defendants aver that an individual who already owns a percentage share of a property — in his or her own name or with a subset of others — can also become a joint tenant as to another distinct percentage share with another subset of owners. (Defs. Br. pp. 7-8.) This is accomplished by means of a separate transaction conveying a fractional interest and satisfying the four unities at the time of that unique conveyance. Id.
No Rhode Island case directly addresses the application of the four unities to the conveyance of a distinct fractional percentage share of property to an already existing holder of an ownership interest. There exists case law from other jurisdictions, however, that support the contention of Defendants. The California Court of Appeals addressed this specific issue in In re Galletto'sEstate. 75 Cal.App. 2d 580, 171 P.2d 152 (1946). InGalletto, the Court held that where a husband and wife owned an undivided one-half interest in realty as joint tenants, the *Page 10 
wife was not precluded from also owning as her separate property the other undivided one-half interest.Id. at 588, 171 P.2d at 157. The Court reasoned that:
 It is, of course, the law that one joint tenant cannot, as to the joint tenancy interest involved, own a greater share than any of the other joint tenant. . . . But this rule does not prohibit one joint tenant from also owning a different and distinct interest in the propert. . . . Once it is conceded that a joint tenancy may exist as to an undivided interest in property, and that rule is perfectly clear, the balance of the undivided interest may lawfully be held by one of the joint tenants as well as by a stranger. . . . There appears to be little case authority directly on point, but the several legal writers in this field that have discussed the problem seem agreed that one joint tenant, independent of his interest in the joint tenancy, may own other interests in the same property.
Id. at 586-87, 171 P.2d at 156-57 (emphasis added). The principle that a valid joint tenancy may exist in an undivided interest has also found favor in Illinois. See Jackson v.O'Connell, 23 Ill. 2d 52, 177 N.E.2d 194 (1961); seealso Klouda v. Pechousek,414 Ill. 75, 110 N.E.2d 258 (1953) ("The requisite unity of interest is satisfied in such a case if it exists with respect to the undivided interest which formed the subject matter of the joint tenancy.").
Although authority on this issue is admittedly scant, courts that have addressed this question conclude that a joint tenant may own a different and distinct interest in the same property. This Court finds that Benjamin Jr.'s ownership of an 8 1/3% interest in Carpenter Farm did not hinder his ability to also own a separate 25% interest in the same realty as a joint tenant with David effectuated by a distinct conveyance later in time. The four unities required for a joint tenancy applied to the specific 25% interest conveyance by Gilbert. Thus, the Court finds that the four unities of interest, time, title and possession were satisfied, and that the Gilbert Deed created a valid joint tenancy.
2. The Joint Tenancy Was Not Severed by SubsequentConveyances
Severance, or termination, of a joint tenancy occurs on destruction of one or more of the unities of interest, title, time and possession. "Each unity can be dissolved by various means, *Page 11 
such as operation of law, the voluntary or involuntary act of one joint tenant or death." Knibb,121 R.I. at 410, 399 A.2d at 1216. Plaintiff argues that even if the Gilbert Deed created a joint tenancy, that joint tenancy was subsequently severed by the conveyance of Lot 2 through the Subdivision Deed, or in the alternative, by the conveyance of Carpenter Farm's development rights.
Plaintiff argues, specifically, that the subdivision of Carpenter Farm into two lots, and the subsequent conveyance of Lot 2 to David, severed the unities of time, title and possession between David and Benjamin Jr. as to the remaining property. (Pl. Br. pp. 11-13.) Plaintiff cites Johnson v. MacIntyre, a Maryland Court of Appeals case, in support of her proposition. 356 Md. 471, 740 A.2d 599 (1999); (Pl. Br. pp. 12-13). While the Court found the joint tenancy severed inJohnson, the case is readily distinguishable from the instant case. The Johnson Court considered the effect of a conveyance to a third party by one joint tenant, without the consent of the other joint tenant, of a parcel, described by metes and bounds, out of a larger, jointly-held tract.Id. at 474, 740 A.2d at 601. Here, the transfer of Lot 2 involved consent of the owners — Mary, Benjamin Jr. and David. In addition, the transfer was made to an existing owner, David, and not to a third-party stranger. Cf. Conveyance to a Stranger by One orLess Than All Joint Tenants, 64 A.L.R. 2d 918 § 4 ("The act of a joint tenant [or less than all joint tenants] in conveying his interest in the property to a stranger operates to sever that interest from the tenancy. . . ."). Thus, Plaintiff's reliance on Johnson is misplaced.
No Rhode Island case addresses this unique severance issue. However, other courts encountering similar situations have held the original joint tenancy to remain intact. Specifically, "where one of three or more joint tenants conveys an interest to one of the others, the conveyee becomes a tenant in common as to theinterest conveyed, but remains a joint tenant *Page 12 
as to his or her original interest." 20 Am. Jur. 2d Cotenancy andJoint Ownership § 24; Where There Are Three or More JointTenants, 64 A.L.R. 2d 918 § 10 (emphasis added). Thus, a conveyance joined in by both or all of the joint tenants necessarily terminates the joint tenancy in the property conveyed but not the remaining property. 64 A.L.R. 2d 918, 925; see also
4 Thompson on Real Property (2d Edition), Termination byAct of All Joint Tenants § 31.08(a) (2004) ("A grant by all joint tenants of less than the complete fee simple (`A and B, the lower forty acres to C and heirs') does not terminate the joint tenancy in the remaining interest.").
For example, in Shelton v. Vance,106 Cal.App. 2d 194, 234 P.2d 1012 (1951), it was held that the act of one of the three joint tenants in conveying her interest to one of the others caused the grantee to become a tenant in common as to a one-third interest and a joint tenant as to the remaining two-thirds interest. In Leonard v. Boswell, the Supreme Court of Appeals of Virginia held that joint tenants' conveyance of their interest in a fraction of land subject to tenancy to the Commonwealth for highway purposes did not destroy the joint tenancy. It operated only as a severance of the joint tenancy with respect to the parcel conveyed, and had no effect on the residue. 197 Va. 713, 90 S.E.2d 872 (1956).
The above principles are applicable in this case. Here, when Mary and Benjamin Jr. conveyed to David their interests in Lot 2, David became the sole owner of Lot 2, and the joint tenancy — with respect to Lot 2 only — was severed. The original joint tenancy between David and Benjamin Jr. created by the Gilbert Deed with respect to residual Lot 1 remained intact. Thus, none of the four unities with respect to Benjamin Jr.'s and David's joint tenancy in Lot 1 was destroyed by the conveyance of Lot 2. Plaintiff's second argument must therefore fail.
Plaintiff's third argument is that the September 1998 deeds transferring the development rights to Carpenter Farm, and establishing a conservation easement, severed the joint tenancy *Page 13 
between Benjamin Jr. and David created by the Gilbert Deed. Plaintiff contends that such a transfer of development rights constitutes a transfer of an ownership interest, consequently destroying the unities of interest, title and possession. (Pl. Reply Br. pp. 4-5.)
This argument hinges on whether or not the transfer of development rights is in essence the transfer of an ownership interest. Development rights are independent of land ownership — the rights are part of the commonly referred to "bundle of rights." The transfer of development rights is considered the creation of a servitude. See 7 Thompson on RealProperty (2d Edition), § 62.28 An Introduction to TransferableDevelopment Rights (2004). Servitudes — such as the transfer of development rights and the conservation easement at issue here — are not possessory interests in land. See Restatement (Third) of Property Servitudes § 1.2(d) (2000) ("The benefit of an easement or profit is considered a nonpossessory interest in land because it generally authorizes limited uses of the burdened property for a particular purpose.").
In the instant case, the conveyance of the development rights to Carpenter Farm to the State of Rhode Island was not a transfer of an ownership interest — it was a transfer of the right to develop.[4]
Benjamin Jr. and David remained equal joint owners of a 25% interest in Carpenter Farm, and still maintained equal rights to possession of the farm, albeit limited by the development restrictions. Thus, despite Plaintiff's argument, the four unities remained intact as to the original joint tenancy between Benjamin Jr. and David created by the Gilbert Deed.
Based on the above application of the law of cotenancy, this Court finds that the joint tenancy created between Benjamin Jr. and David by the Gilbert Deed was valid, and remained intact until Benjamin Jr.'s death in 2005. David received Benjamin Jr.'s interest in Carpenter Farm by operation of law as the surviving joint tenant. Thus, Plaintiff's calculation of her *Page 14 
ownership interest as 10.4166% is incorrect. Defendants correctly calculate Plaintiff's undivided interest as 4.16%. Thus, there is no genuine issue of material fact as to Plaintiff's ownership interest. Summary judgment is denied as to Plaintiff's claim of a 10.4166% ownership interest, and granted as to Defendants' calculation of Plaintiff's ownership interest at 4.16%.
B. Partition of Carpenter Farm
Partition actions in this state are governed by statute.Bianchini v. Bianchini, 76 R.I. 30, 33, 68 A.2d 59, 61 (1949); G.L. 1956 § 34-15-1 et seq. Partition is available in two forms: in kind or by sale. In the instant action, Plaintiff seeks partition of Carpenter Farm by sale.
Rhode Island General Laws § 34-15-16 governs partition by order of sale and reads as follows:
 Order of Sale — In an action for partition, the superior court may, in its discretion, upon motion of any party to the action, order the whole premises sought to be divided, or any particular lot, portion, or tract thereof or the interest of the plaintiff or plaintiffs or of the defendant or defendants in the whole premises, or in any particular lot, portion, or tract thereof, to be sold, either at public auction or by private contract, under the direction of the court, by the commissioner or commissioners appointed to divide or sell the same; provided, that if the sale is made by private contract, it shall not be made for less than the sum fixed by the court in its decree authorizing the sale by private contract.
Section 34-15-16 applies only when a physical division of the property by metes and bounds is impracticable. Bianchini,76 R.I. at 34, 68 A.2d at 62; Lannon v. Lannon,40 R.I. 60, 99 A. 819 (1917). Once such impracticability is established, the court has discretion as to whether partition by sale shall be ordered. DeBartolo v. DiBattista,117 R.I. 349, 351-52, 367 A.2d 701, 702 (1976). Here, the parties agree that such a division is impracticable, primarily due to the restrictions created by the sale of Carpenter Farm's development rights and the implementation of the conservation easement. The Court is inclined to agree, and finds division of Carpenter *Page 15 
Farm by metes and bounds to be impracticable. Thus, there is no genuine issue of material fact regarding whether Carpenter Farm can be partitioned in kind.
Plaintiff urges this Court — in its judicial discretion pursuant to G.L. 1956 § 34-15-16 — to order the partition of Carpenter Farm by sale. (Am. Compl. p. 2.) Prior to exercising such discretion, a trial judge is required to consider all facts and circumstances in evidence. Prior v. Prior,447 A.2d 1155, 1157 (R.I. 1982). Generally, inconvenience or difficulty in making the partition or hardship or substantial loss to some of the parties does not affect the right of the court to exercise its discretion in ordering partition. Matracia v.Matracia, 119 R.I. 431, 436, 378 A.2d 1388, 1392 (1977).
Defendants' aver that an order of sale is not appropriate in this case, given Plaintiff's small ownership interest. Instead, Defendants contend that the Court should instead apply a financial adjustment approach, suggesting the equitable concept of owelty.[5] (Defs. Br. pp. 13-14.) Owelty, however, is relief incidental only to physical partition by metes and bounds.See Joslin v. Joslin, 62 R.I. 389, 6 A.2d 456 (1939). Because Carpenter Farm cannot be practicably divided, the application of owelty is not relevant in this case.
However, a review of the evidence before the Court in the light most favorable to the nonmoving party[6] does indicate that an order of sale of the entirety of Carpenter Farm would be a drastic remedy. Plaintiff holds a 4.16% ownership interest, while Mary A. Carpenter (and the Mary A. Carpenter Realty Trust) and David W. Carpenter each hold a 66.667% and 25% interest, respectively.[7]
Carpenter Farm — a working farm operation — has remained in the *Page 16 
Carpenter family for many years. This Court will not effect such an inequity upon the parties merely because it would be permissible to order a partition by sale at public auction. Instead, this Court, in exercise of its discretion, finds a private sale of Plaintiff's interest to the remaining co-owners more appropriate. G.L. 1956 § 34-15-16; Bissonnette v. Ventura, No. Civ.A. PC02-3437, 2004 WL 2821652 (R.I. Super. Ct. Nov. 22, 2004).See also 4 Thompson on RealProperty (2d Edition) § 38.05(b) Alternatemethod — Appraisal and Sale to One of the Co-owners (2004). Such a private sale is authorized by statute. G.L. 1956 § 34-15-16 ("[T]he superior court may, in its discretion, order . . . any particular lot, portion or tract thereof or theinterest of the plaintiff . . . or of the defendant . . . in the whole premises . . . to be sold, either at public auction or by private contract.") (Emphasis added.) The private sale will effectuate the "buy out" of Plaintiff's ownership interest by the Defendants under the direction of the Court. G.L. 1956 § 34-15-16.
C. The Value of Carpenter Farm
The value of Carpenter Farm is disputed and, thus, judgment as a matter of law on this issue is not appropriate. Defendants' base their valuation on an appraisal completed in 2006, valuing Carpenter Farm at $395,680.00. (Defs. Ex. 12.) Plaintiff has provided evidence contrary to this valuation, including the most recent South Kingstown tax assessment, which values Carpenter Farm at $1,006,400.00. (Pl. Second Aff.) This Court shall appoint a commissioner pursuant to G.L. 1956 § 34-15-24 to appraise the current value of the property and to facilitate the private sale of Plaintiff's interest to the Defendants.[8]
G.L. 1956 §§ 34-15-16; 34-15-24.
Plaintiff also seeks an account of the income derived from Carpenter Farm and payment to the Plaintiff of her share of said income. (Pl. Am. Compl. p. 2.) Plaintiff contends that she has *Page 17 
not received rent or income derived from operation of Carpenter Farm since October of 2006. (Pl. Aff. ¶ 19.) This Court shall direct the commissioner appointed to oversee the partition of Plaintiff's ownership interest to also make findings as to whether the Defendants are indebted to Plaintiff for income and profits derived from the operation of Carpenter Farm.
D. Costs and Attorneys' Fees
Defendants' seek costs and attorneys' fees in connection with their motion for summary judgment pursuant to G.L. 1956 § 34-15-22. Plaintiff also requested such relief in her Complaint. The statute stipulates that:
 Apportionment of Costs — In an action for partition, the court before which the action may be pending may adjudge and determine, as to it shall appear equitable and just, relative to the apportionment of costs among the parties, plaintiff and defendant, by dividing the costs equally or subjecting either party to the payment of the whole or any part thereof.
G.L. 1956 § 34-15-22. The Justice of the superior court may in his or her sound discretion award counsel fees as part of costs assessed in a partition suit. Barney v. Barney,83 R.I. 182, 114 A.2d 399 (1955). Fees and expenses of a commissioner are also properly assessable as costs of a partition suit. Id.
"The theory underlying the apportionment of attorney's fees in partition actions is the common benefit doctrine, and is predicated upon `the principle that where a suit for partition was necessary, and its benefit inured to all the parties, the cost of procuring it should not be thrown wholly upon the complainant, but should be borne in part by those who share in the benefit.'" Moore v.Ballard 914 A.2d 487, 490 (R.I. 2007) (quoting Robinson v.Robinson, 24 R.I. 222, 223, 52 A. 992, 993 (1902)). Costs are generally awarded where the court determines that the services were rendered in connection with the partition and for the common benefit of all of the parties. Francis v. Francis,81 R.I. 346, 348-49, 102 A.2d 872, 873 (1954). For example, where a *Page 18 
suit for partition of property was contested by a respondent in attempt to defeat an entry of decree of partition, counsel for respondent was not entitled to counsel fees.Id. at 350, 102 A.2d at 873-74. Costs, including attorneys' fees, must be apportioned, if at all, before the judgment in the partition action becomes final. Moore, 914 A.2d at 490.
Here, the Defendants did oppose Plaintiff's petition for partition by order of public sale. In addition, Plaintiff and Defendants disputed the actual extent of Plaintiff's ownership interest. Therefore, this Court cannot conclude that either counsel worked for the benefit of all parties. Accordingly, the parties' requests for apportionment of attorneys' fees is denied. Services of a commissioner, however, are rendered in connection with a partition and for the common benefit of all of the parties. SeeFrancis, 81 R.I. at 348, 102 A.2d at 873 (1954). Thus, fees and expenses of the commissioner shall be apportioned in accordance with the ownership interests of the parties.
 IV Conclusion
This Court finds that Plaintiff Susan Carpenter has an undivided 4.16% possessory interest in Carpenter Farm as a matter of law and that Defendants are the owners of the remaining interests in said property. Thus, Defendants are entitled to partial summary judgment as to the extent of Plaintiff's ownership interest. This Court also finds that because of certain development restrictions affecting Carpenter Farm, a physical partition of the property by metes and bounds is impracticable. For the reasons stated above, this Court finds in its discretion that Carpenter Farm should not be partitioned by order of public sale. Instead, a partition by private sale of Plaintiff's ownership interest in Carpenter Farm shall be made to the Defendants after valuation by a commissioner. The commissioner shall also make findings as to whether the *Page 19 
Defendants are indebted to Plaintiff for income derived from the operation of Carpenter Farm. Fees and expenses of the commissioner shall be apportioned in accordance with each party's ownership interest in Carpenter Farm. This Court refrains from an apportionment of attorneys' fees in this matter.
Counsel shall submit an order in accordance with this opinion within ten days.
[1] Plaintiff Susan Carpenter seeks only partial summary judgment in this matter.
[2] Carpenter Farm originally encompassed 41.21 acres; however, it presently comprises 38.43 acres, after a subdivision and subsequent conveyance of a small eastern portion to Defendant David W. Carpenter in 1998.
[3] Benjamin S. Carpenter, Jr. was known by several names during his lifetime, including, Benjamin S. Carpenter, II, Benjamin Stanton Carpenter, Jr., Benjamin S. Carpenter, Jr., Benjamin Stanton Carpenter, IV, and Benjamin S. Carpenter, IV. (Pl. Aff. ¶ 2.) For purposes of this Decision, he will be referred to as "Benjamin Jr." Benjamin Jr. is Plaintiff's late husband.
[4] It should also be noted that the State of Rhode Island is not a named defendant in this action for partition, further indicating a lack of ownership interest acquired by the State.
[5] In cases where the most sensible physical division of realty does not create parcels of equal value, courts are empowered to award owelty. Owelty is a practical measure through which a court can equalize the difference in value of shares by requiring the recipient of a larger share to pay a compensating sum of money to the recipient of a smaller share. 4 Thompson on RealProperty (2d Edition) § 38.04(b) Owelty (2004).
[6] Plaintiff is the nonmoving party on this issue. Defendants requested summary judgment as to the implementation of a financial adjustment approach to the partition in their motion.
[7] The remaining 4.16% interest is held by the Estate of Benjamin S. Carpenter III.
[8] "Appointment of Persons to Make Partition-In actions for partition, after judgment for partition has been entered, the superior court on motion shall appoint and commission one or more discreet, impartial, and disinterested persons to make partition pursuant to such judgment, who shall be sworn to the faithful discharge of their trust." G.L. 1956 § 34-15-24.